**Joe Ed BUNTON, Petitioner,**

**v.**

**Bascom W. BENTLEY III, Respondent.**

No. 03–0974.

Supreme Court of Texas.

Dec. 17, 2004.

Joe Ed Bunton, pro se.

George Chandler, Mike A. Hatchell, Molly H. Hatchell, Tyler, Reich Chandler, Darrin M. Walker, Law Office of Darrin Walker, Kingwood, for respondent.

PER CURIAM.

The primary issue in this case is whether the petitioner waived his right to complain that the exemplary damages awarded by the trial court were unconstitutionally excessive. Even though the petitioner did not complain about the exemplary damages until the court of appeals issued its judgment, we conclude that he did not waive that claim. In this case, the court of appeals' judgment reduced the trial court's award of compensatory damages but left the exemplary damages intact. After the reduction of compensatory damages, the court of appeals had an obligation to review whether the exemplary damages were "reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); *see also Tatum v. Preston Carter*

2

*Co.,* 702 S.W.2d 186, 187–88 (Tex.1986). The petitioner's claim that the exemplary damages were excessive in light of the actual harm thus arose only after the court of appeals reduced the compensatory-damage award. Consequently, we conclude that the claim is not waived, and we remand this case to the court of appeals for reconsideration of the exemplary damages.

This is the second time that this Court has considered this defamation case. The case arose in the 1990s, when Joe Ed Bunton, a public-access television host in Palestine, Texas, repeatedly accused Bascom Bentley III, a local district judge, of being "corrupt" and a "criminal" who "oughta be in jail." Bunton also accused Bentley of engaging in judicial misconduct, making improper campaign contributions, and various other misdeeds. Bentley requested that Bunton cease making such allegations, but Bunton refused, stating on his program that he welcomed a defamation suit from Bentley because "the facts are with us and this is the truth, and therefore it is not slander." Bentley subsequently sued Bunton and his television co-host for defamation.

At trial, the court directed a verdict that Bunton's allegations of corruption and criminality were defamatory per se, and the jury then found that Bunton had made those statements with actual malice. The trial court's judgment ordered Bunton to pay Bentley $150,000 for past and future loss of character and reputation, $7 million for past mental anguish, and $1 million in exemplary damages. After the court of appeals initially affirmed the judgment against Bunton, this Court remanded the case back to the court of appeals "to reconsider the excessiveness of the jury's award of mental anguish damages against Bunton." 94 S.W.3d 561, 607. On remand, the court of appeals concluded that "[a]n award of $7,000,000.00 in mental anguish

damages is unsupported by the evidence and is so large as to be contrary to reason," and suggested a remittitur that would reduce the mental anguish damages to $150,000. —— S.W.3d ——, 2003 WL 21831533. The court of appeals did not adjust the exemplary damages because Bunton "did not complain on appeal of the award of exemplary damages." *Id.* at —— n. 1. Nevertheless, the court did note that "the ratio between the actual damage award, after remittitur, and the award for exemplary damages falls within the parameters set by the United States Supreme Court." *Id.* (citing *Campbell,* 538 U.S. at 424, 123 S.Ct. 1513). In this Court, Bunton now challenges the awards of both compensatory and exemplary damages.

We first conclude that there is legally sufficient evidence to support the court of appeals' judgment with regard to the compensatory damages. When this case was before this Court for the first time, a four-judge plurality of the Court held that there was "no evidence that Bentley suffered mental anguish damages in the amount of $7 million," and remanded the case to the court of appeals to reconsider the mental anguish damages. 94 S.W.3d 561, 607–08. A majority of the Court agreed, however, that Bentley had provided legally sufficient evidence of some amount of mental anguish, stating that "[t]he record leaves no doubt that Bentley suffered mental anguish." *Id.* at 606; *see also id.* at 623–24 (Baker, J., dissenting). A majority of the Court also agreed that "[t]he other amounts of actual damages found by the jury are well within a range that the evidence supports." *Id.* at 607; *id.* at 624 (Baker, J., dissenting). On remand, the court of appeals concluded that the $7 million mental anguish award was "unsupported by the evidence" and "so large as to be contrary to reason." —— S.W.3d ——. The court determined that

$150,000 would be "reasonable compensation" based on the evidence Bentley presented at trial, and suggested a $6,850,000 remittitur. *Id.*

■ Consequently, the only compensatory-damages question before this Court is whether legally sufficient evidence supports a mental anguish award of $150,000. We conclude that it does. As we noted in our prior opinion, there was evidence that "the ordeal had cost [Bentley] time, deprived him of sleep, caused him embarrassment in the community in which he had spent almost all of his life, disrupted his family, and distressed his children at school," and that "[f]riends testified that he had been depressed, that his honor and integrity had been impugned, that his family had suffered, too, adding to his own distress, and that he would never be the same." 94 S.W.3d 561, 606–07. We therefore hold that legally sufficient evidence supports the court of appeals' judgment as to the compensatory damages.

■ Although the court of appeals suggested a significant remittitur of compensatory damages, it did not reevaluate the exemplary damages; instead, the court held that Bunton had waived any claim as to exemplary damages when he failed to "complain on appeal of the award of exemplary damages." —— S.W.3d —— n. 1. We agree that, ordinarily, an appellant waives any complaint about the trial court's judgment that is not raised in the court of appeals. *See Johnson v. Lynaugh,* 796 S.W.2d 705, 707 (Tex.1990); Tex.R.App. P. 53.2(f) ("If the matter complained of originated in the trial court, it should have been preserved for appellate review in the trial court and assigned as error in the court of appeals."). A complaint that arises from the court of appeals' judgment itself, however, may be raised either in a motion for rehearing in the court of appeals or in a petition for review in this Court. *See Larsen v. FDIC/Manager Fund,* 835 S.W.2d 66, 74 n. 12 (Tex.1992); Tex.R.App. P. 49.9. Under this standard, we conclude that Bunton's complaint that the exemplary damages were unconstitutionally excessive arose from the court of appeals' judgment and may therefore be raised in this Court for the first time.

We have held that exemplary damages must be reasonably proportionate to compensatory damages, and that adjustment of compensatory damages therefore requires reevaluation of the factors supporting an award of exemplary damages. *See Tatum v. Preston Carter Co.,* 702 S.W.2d 186, 188 (Tex.1986). Exemplary damages should not be adjusted by a mathematical formula; instead, each of the factors supporting the exemplary damages should be reevaluated in light of the actual harm suffered by the plaintiff. *See id.*

■ The United States Constitution similarly requires an analysis of the relationship between the actual harm suffered and the exemplary damages awarded. *Campbell,* 538 U.S. at 416–18, 123 S.Ct. 1513. This requirement is based on the Due Process Clause of the Fourteenth Amendment, which "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* In order to avoid the imposition of grossly excessive or arbitrary exemplary damages, the United States Supreme Court requires courts reviewing exemplary damages to consider three factors: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418, 123 S.Ct. 1513 (citing *BMW of North America, Inc. v. Gore,* 517

U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). Each of these factors must be reviewed *de novo* to ensure that exemplary damages are not "grossly disproportional" to the gravity of the defendant's conduct. *Cooper Indus. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 434–36, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).

All three factors work together to ensure that exemplary damages are "reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *See Campbell*, 538 U.S. at 426, 123 S.Ct. 1513. These factors are intertwined with each other and cannot be viewed in isolation; specifically, a reviewing court cannot conclude that a particular ratio is consistent with due process requirements unless that court examines the ratio in light of the other factors and in light of the actual harm to the plaintiff. *Id.* at 425–26, 123 S.Ct. 1513 (noting that the Constitution's "due process guarantee" requires the reviewing court to consider the egregiousness of the defendant's act, the actual harm to the plaintiff, and the amount of compensatory damages awarded in determining whether the ratio is appropriate). Consequently, while the court of appeals correctly noted that the 3:1 damage ratio in this case is in line with ratios upheld by the Supreme Court, the analysis cannot end there. Instead, the "principles set forth in *Gore* must be implemented with care, to ensure both reasonableness and proportionality," and the analysis must be done "in light of the ... compensatory damages awarded." *Id.* at 428–29, 123 S.Ct. 1513.

Because the exemplary damages must bear a reasonable relation to the defendant's conduct and to the actual harm suffered, a claim that the exemplary damages are grossly disproportionate may therefore arise any time the compensatory damages are significantly adjusted. Ideally, the court of appeals should automatically re-evaluate exemplary damages whenever compensatory damages are reduced. *See Preston Carter Co.*, 702 S.W.2d at 187–88. In this case, the court of appeals reduced the mental anguish damages from $7 million to $150,000. Even though Bunton did not initially appeal the award of exemplary damages, we conclude that he is entitled to raise a claim that those damages are excessive in light of the court of appeals' reduction of the compensatory-damage award. We therefore affirm the portion of the court of appeals' judgment dealing with compensatory damages, reverse the portion of the judgment dealing with exemplary damages, and remand this case to the court of appeals for further proceedings consistent with this opinion.

Justice O'NEILL did not participate in the decision.