**John EL–KHOURY, Appellant,**

**v.**

**Benjamine KHEIR, Appellee.**

**No. 01–06–00088–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 14, 2007.

Christy Lynn Martin Liddle, David A. Chaumette, Shook, Hardy & Bacon, L.L.P., Houston, TX, for appellant.

James Nathan Overstreet, Williams & Overstreet, P.C., Houston, TX, for appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION

Sherry RADACK, Chief Justice.

This defamation case arises from a dispute between private individuals. Appellee, Benjamine Kheir claimed that appellant, John El–Khoury, defamed him by accusing him of not paying a debt. Both parties disputed the underlying debt at trial. A jury found that El–Khoury defamed Kheir, that Kheir incurred $25,000 in actual damages for his mental anguish, and that El–Khoury acted with malice that entitled Kheir to $147,000 in punitive damages. The jury also rejected the parties' cross-actions on the claimed debt and awarded attorney's fees to Kheir for trial and contingent attorney's fees for appeal. In five points of error, El–Khoury contends that remand for a new trial is proper because (1) the evidence is (a) legally and factually insufficient to support the jury's finding that he defamed Kheir, (b) legally insufficient to support either the actual damage or punitive damage awards, and (c) factually insufficient "to support entry of judgment for Kheir on [his] declaratory judgment action" and (2) the award of attorney's fees to Kheir is "inequitable and unjust."

We affirm in part and reverse and remand in part.

## Factual and Procedural Background

Kheir and El–Khoury are residents of the same village in Lebanon and are acquainted with one another. Kheir's claims in this lawsuit pertain to an "Agreement to Transfer Partnership Interest and Stock Ownership in Corporation" (agreement to transfer). The corporation in question is a Texas corporation known as K & K Investment, Inc. (K & K), which operated a car dealership with two locations in Houston. Kheir's and El–Khoury's names and signatures appear in various forms and on several documents relating to the sale of a Texas corporation, including the agreement to transfer itself. The version of the agreement to transfer that forms the basis of this lawsuit recites that Kheir is indebted to El–Khoury in the amount of $147,000 in connection with the sale of K & K. Before Kheir filed this action, El–Khoury sued him in Lebanon to enforce the agreement to transfer. Kheir has asserted counterclaims in that action.

Concerning the defamation claim, it is undisputed that both Kheir and El–Khoury are private individuals. Kheir claimed that El Khoury slandered him by communicating to others that Kheir had agreed to pay El Khoury $147,000, but had not kept his promise. Kheir's pleadings state that El Khoury's statements were "entirely false" and made maliciously, thus entitling Kheir to general damages for injury to his reputation, special damages, and punitive damages. Kheir also sought to set aside the agreement to transfer on grounds of fraud. Kheir claimed that he had never signed the agreement to transfer and sought a declaration to rescind it.

El–Khoury filed a counterclaim contending that Kheir owed the $147,000 and denied making allegedly defamatory statements.

After a four-day trial, the trial court submitted 14 questions to the jury, which found as follows:

- El–Khoury did not fail to comply with the agreement to transfer and did not commit fraud in selling his interest in K & K (questions 1 and 2);[1]
- El–Khoury's statements, "that he had not been paid and/or fully paid for his interest" in K & K, were defamatory (question 5);
- El–Khoury's defamatory statements proximately caused Kheir $25,000 in mental anguish and suffering[2] (question 6);
- clear and convincing evidence that the harm to Kheir resulted from malice (question 7);
- $147,000 should be assessed against El–Khoury as exemplary damages (question 8);
- Kheir did not promise $147,000 to El–Khoury in exchange for the agreement to transfer concerning K & K (question 10);
- A reasonable fee for Kheir's attorney's services was $40,000 for preparation and trial, $7,500 for an appeal to this Court, and $5,000 for an appeal to the Supreme Court of Texas (question 11);
- Kheir and El–Khoury did not enter into an agreement providing that Kheir would purchase all of El–Khoury's interest in K & K for $147,000, and Kheir did not "fail to comply with the [a]greement (question 12)."[3]

---

1. Based on these answers, the jury did not respond to questions 3 and 4, concerning damages related to questions 1 and 2.

2. The jury found no damages for lost profits, harm to Kheir's "good name and character among his … friends, neighbors, or acquaintances," his "good standing in the community," or his "personal humiliation."

3. Given the response to question 12, the jury did not answer question 13, concerning a sum of money that would compensate El–Khoury

## Defamation—Sufficiency of Evidence of Damages

### A. Elements of Defamation Claim

 To prevail on his claim that El–Khoury defamed him, Kheir had to prove that El–Khoury (1) published a statement about Kheir, a private individual rather than a public figure, (2) that was defamatory concerning Kheir, while (3) acting negligently regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998); *Harvest House Publishers v. Local Church*, 190 S.W.3d 204, 210 (Tex.App.-Houston [1st Dist.] 2006, pet. denied); *Saudi v. Brieven*, 176 S.W.3d 108, 117–18 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).[4] To constitute defamation, the published statement must have been false, which Kheir had the burden to prove. *See Hearst Corp. v. Skeen*, 159 S.W.3d 633, 636–37 n. 1 (Tex. 2005) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 586–87 (Tex.2002)).

for Kheir's failure to comply with the agreement. The jury also did not respond to question 14, concerning attorney's fees for El–Khoury's counsel.

4. Whether a publication is defamatory is initially a question of law for the court, which resolves the question by considering the allegedly defamatory statement as a whole, rather than in isolation, to determine how a person of ordinary intelligence would perceive it. *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex.2000); *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex.1987); *Harvest House Publishers v. Local Church*, 190 S.W.3d 204, 210 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). If the language of the statement is ambiguous or of doubtful import, the trial court may submit a question to the jury to determine whether the statement is defamatory. *See Denton Pub. Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex.1970); *Harvest House Publishers*, 190 S.W.3d at 210. The court reporter's notes concerning the record of this case show that she was not asked to transcribe the conference on the jury

### B. Actual Damages—Mental Anguish

It is axiomatic that Kheir could not prevail unless he also proved that he suffered actual damages as a result of the alleged defamation. *See WFAA–TV*, 978 S.W.2d at 571; *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 382 (Tex.App.-Houston [1st Dist.] 2005, no pet.). In this case, the jury awarded nothing for the following elements of claimed damages: lost profits; harm to Kheir's "good name and character among his ... friends, neighbors, or acquaintances"; his "good standing in the community"; or his "personal humiliation." The only damages awarded were for Kheir's "mental anguish and suffering," which the jury assessed at $25,000 as fair and reasonable compensation for damage caused by El–Khoury's alleged statements. In his second point of error, El–Khoury contends that the evidence is legally insufficient to support the jury's $25,000 award for mental anguish and suffering. We agree.[5]

charge. Thus, though the trial court may have concluded that the language of El–Khoury's alleged statements was ambiguous or of doubtful import and submitted the defamation question to the jury for that reason, it is not clear from the record that the court submitted the defamation question to the jury for that reason.

5. Kheir contends that, because El–Khoury's statements constituted slander per se, he was not required to prove his damages. *See Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 756 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (stating that, to be actionable without proof of damage, slander must impute one of following: crime; loathsome disease; injury to person's office, business, profession or calling; or sexual misconduct). We need not decide whether El–Khoury's statements constituted slander per se because Kheir's contention conflicts with the record, which establishes that the jury determined whether El–Khoury defamed Kheir. Though the reporter's record does not contain a transcription of the charge conference, nothing in the record

### 1. Error Preserved in Motion for New Trial

To preserve a complaint for appellate review, the record must show that El–Khoury complained to the trial court by a timely request, objection, or motion, and that the trial court ruled on or refused to rule on the request, objection, or motion. *See* Tex.R.App. P. 33.1(a). More specifically, to preserve his legal-sufficiency challenge to the jury's award of $25,000 in damages for Kheir's mental anguish and suffering, El–Khoury had to assert his challenge in (1) a motion for directed verdict; (2) an objection to submitting question 6, concerning actual damages, including damages for mental anguish and suffering, to the jury; (3) a motion for judgment notwithstanding the verdict; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *See Cecil v. Smith,* 804 S.W.2d 509, 510–11 (Tex.1991); *Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 822 (Tex.1985); *UPS, Inc. v. Tasdemiroglu,* 25 S.W.3d 914, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In this case, El–Khoury asserted his challenges solely in his motion for new trial.

### 2. Standard of Review—Legal Sufficiency

■ We must sustain a legal sufficiency point (1) when there is a complete absence of a vital fact; (2) when rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) when the evidence offered to prove a vital fact is no more than a scintilla; or (4) when the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson,* 168 S.W.3d 802, 810 & nn. 15–16 (Tex.2005) (citations omitted).

In *City of Keller,* the supreme court reexamined the standard of review for legal-sufficiency challenges. "The final test for legal sufficiency," concluded the court, "must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. "[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* If the evidence "would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." *See id.* at 822. As long as the evidence falls within "the zone of reasonable disagreement," a "reviewing court cannot substitute its judgment for that of the trier-of-fact." *Id.* at 822.

### 3. Recovery of Mental Anguish Damages

■ Mental anguish damages are recoverable in a defamation case. *Bentley v. Bunton,* 94 S.W.3d 561, 604 (Tex.2002) (*Bentley I*). In *Bentley I,* the supreme court applied the legal-sufficiency test to mental anguish damages awarded as compensation for injuries and mental strain arising from damage to reputation and good name stemming from accusations of corruption by a media defendant. *See id.* at 575. Though a majority of the court agreed that Bentley had provided legally sufficient evidence of some amount of mental anguish, *id.* at 606, a four-judge plurality concluded there was legally insufficient evidence to support $7 million in mental anguish damages. *Id.* at 607–08. On remand to consider that award, the Tyler Court of Appeals concluded that the $7 million mental anguish award was "unsupported by the evidence" and "so large as to

---

or Kheir's arguments suggests that he objected to the jury's deciding the defamation question. To any extent that El–Khoury's state-

ments constituted slander per se, submitting a defamation question to the jury would have been superfluous.

be contrary to reason"; determined from the trial record that $150,000 would be "reasonable compensation"; and suggested a $6,850,000 remittitur. *Bunton v. Bentley,* 176 S.W.3d 18 (Tex.App.-Tyler 2003), aff'd in part and rev'd in part, 153 S.W.3d 50 (Tex.2004).

In addressing the remitted award in *Bunton v. Bentley,* 153 S.W.3d 50 (Tex. 2004) (*Bentley II* ), the supreme court concluded that legally sufficient evidence supported awarding $150,000 to Bentley as compensatory damages for his mental anguish. *Id.* at 53. Citing *Bentley I,* the court noted that "the ordeal" of his defamation had cost Bentley time, deprived him of sleep, caused him embarrassment in the community in which he had spent almost all of his life, disrupted his family, and distressed his children at school. *Bentley II,* 153 S.W.3d at 53 (citing *Bentley I,* 94 S.W.3d at 606–07). Moreover, evidence from Bentley's friends showed that he had become depressed, that his honor and integrity had been impugned, and that his family's related suffering added to his own distress; in short, "he would never be the same." *Id.* In Bentley's own words, the experience of being accused of corruption was "the worst of his life." *Bentley I,* 94 S.W.3d at 606–07.

Both *Bentley* decisions reflect the concerns initially expressed by the supreme court in *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607 (Tex.1996), and *Parkway Co. v. Woodruff,* 901 S.W.2d 434 (Tex.1995), that legally sufficient proof support mental anguish awards in order to "ensure" that recovery for such non-economic damages constitute compensation for actual injuries to the plaintiff rather than "a disguised disapproval of the defendant." *Bentley I,* 94 S.W.3d at 605, 606–07 (citing and quoting from *Saenz,* 925 S.W.2d at 614).[6]

According to the definition derived from *Parkway,* mental anguish

implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*See Parkway,* 901 S.W.2d at 444 (quoting *Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.-Corpus Christi 1979, no writ)).[7] Recognizing the "somewhat unwieldy" nature of the definition, the supreme court acknowledged that the definition nonetheless requires the jury to distinguish between "lesser" reactions and degrees of emotions, for example, disappointment, embarrassment, and anger, for which there is no compensation, and more extreme degrees of emotions, for example, severe disappointment, wounded pride, and indignation, which may be compensable in a proper case, *see id.* at 444–45 (citing *J.B. Custom Design & Bldg. v. Clawson,* 794 S.W.2d 38, 43 (Tex.App.-Houston [1st Dist.] 1990, no writ)), on a further showing that these emotions substantially disrupted the plaintiff's daily routine. *See Saenz,* 925 S.W.2d at 614 (citing *Parkway,* 901 S.W.2d at 444); *see also Rice Food Mkts., Inc. v. Williams,* 47

---

6. *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607 (Tex.1996), relied on and clarified *Parkway Co. v. Woodruff,* 901 S.W.2d 434 (Tex.1995). *See Saenz,* 925 S.W.2d at 614. By relying on *Saenz* in *Bentley v. Bunton,* 94 S.W.3d 561 (Tex.2002) (*Bentley I* )

(citing and quoting from *Saenz,* 925 S.W.2d at 614), the supreme court's analysis encompasses both *Saenz* and *Parkway.*

7. The jury charge did not define "mental anguish."

S.W.3d 734, 735–36, 738–39 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (applying *Saenz* and *Parkway* standards to jury award of mental anguish damages to employee who sued nonsubscriber employer for maintaining unsafe workplace and holding that award not supported by legally sufficient evidence).

■ Evidence of "adequate details" to assess mental anguish may derive from the claimant's own testimony, the testimony of third parties, or testimony by expert witnesses. *Parkway*, 901 S.W.2d at 444. Though the supreme court declined, or "stop[ped] short," of requiring this type of evidence whenever a plaintiff seeks mental anguish damages, the court emphasized that lack of this evidence, "particularly when it can be readily supplied or procured by the plaintiff, justifies close scrutiny of other evidence offered" to support damages for mental anguish. *Id.*

■ In addition to evidence of compensable mental anguish, under the standards just stated, some evidence must justify the amount awarded as compensation. *Saenz*, 925 S.W.2d at 614; *see Bentley II*, 153 S.W.3d at 53. Consistent with the language of the standard jury charge used in this case, juries may not "simply pick a number and put it in the blank," but must determine an amount that "fairly and reasonably" compensates for mental anguish "that causes 'substantial disruption in ... daily routine' or a 'high degree of mental pain and distress.' " *Saenz*, 925 S.W.2d at 614 (citing *Parkway*, 901 S.W.2d at 444).

■ Applying these substantive guidelines within the parameters of the *Keller* legal-sufficiency standards, we agree with El–Khoury that the evidence in this case is not legally sufficient to support the jury's awarding Kheir $25,000 as "fair" and "reasonable" compensation for mental anguish and suffering from allegedly defamatory statements by El–Khoury to others concerning Kheir's failure to pay the $147,000 consideration recited in the agreement to transfer.

Kheir and his wife provided the only testimony concerning his claim of mental anguish. There was no testimony by third parties and no expert testimony. Kheir generally attested to "stress" and "anxiety," and also stated that he lost weight, experienced headaches, and had difficulty sleeping that sometimes required him to take a sleeping pill. Though Kheir's wife stated that he was "half the man he was," the only specifics she provided were that he was "very stressed" and had difficulty sleeping. Neither Kheir nor his wife described a "high degree" of pain or distress that "substantially" disrupted Kheir's daily routine. *See Saenz*, 925 S.W.2d at 614; *Parkway*, 901 S.W.2d at 444. In addition, neither Kheir nor his wife attempted to establish a causal connection between the defamatory statements allegedly made by El–Khoury and Kheir's stress and anxiety.

To the contrary, Kheir's testimony consistently linked his stress to damage to his reputation or lack of respect among the 3,000 to 4,000 people in the Lebanese village where he lived and had his business. Yet, the jury rejected any amount of damages, either for harm, if any, to Kheir's "good name and character among his ... friends, neighbors, and acquaintances," or harm, if any, to his "good standing in the community." Pursuant to the jury's responses to other questions in the charge, therefore, as well as the standards imposed by the *Parkway*, *Saenz*, and *Bentley* line of cases, which require proof of a high degree of mental pain and distress that surpasses worry, anxiety, vexation, embarrassment, or anger, *see Parkway*, 901 S.W.2d at 444, Kheir's complaints relating to damage or lack of respect are no evidence of mental anguish and suffering that

derive from any allegedly defamatory statements by El–Khoury.

Kheir also referred to his inability to obtain credit for a planned expansion of his business and stated that vendors and suppliers discontinued their previous practice of permitting him to pay accumulated invoices at the end of a season. But, the record establishes that Kheir's credit problems resulted from a lien that was automatically imposed on some of Kheir's property after El–Khoury filed suit in Lebanon to enforce the agreement to transfer. As the record further demonstrates, news of lawsuits appears in newspapers in Lebanon. Yet, Kheir bases his claims in this lawsuit on El–Khoury's allegedly defamatory statements to others, rather than on allegations in his lawsuit, which would be privileged regardless and, thus, not actionable. *See Bird v. W.C.W.,* 868 S.W.2d 767, 771 (Tex.1994); *James v. Brown,* 637 S.W.2d 914, 916 (Tex.1982).

Finally, the record lacks any evidence from which the jury might have derived the $25,000 amount awarded to Kheir as fair and reasonable compensation for his claimed mental anguish. *See Bentley II,* 153 S.W.3d at 53.

Like Kheir, evidence supporting Bentley's distress also included difficulty sleeping and embarrassment in the community. *See id.* But, these were not the dispositive factors that substantiated the degree of emotional injury required by *Parkway* and *Saenz* to warrant the $150,000 damages ultimately awarded for Bentley's mental anguish claim. To the contrary, both *Bentley* opinions refer to additional evidence showing that Bentley lost time from work, and that the allegations of corruption disrupted his family life and affected his children at school. *Bentley II,* 153 S.W.3d at 53 (citing *Bentley I,* 94 S.W.3d at 606–07). Bentley was not merely "stressed," but "depressed"; he referred

to the experience of being accused of corruption "the worst of his life." *Bentley I,* 94 S.W.3d at 606–07. Friends confirmed that his family's distress increased his personal suffering and that his honor and integrity had been impugned, to the degree that "he would never be the same." *Bentley II,* 153 S.W.3d at 53 (citing *Bentley I,* 94 S.W.3d at 606–07).

For these reasons, and in accordance with the substantive principles of the *Parkway–Saenz–Bentley* line of authority, *see Keller,* 168 S.W.3d at 810 ("situation (b)"), as well as the *Keller* standards that control legal-sufficiency review, we hold that the evidence from the trial of this case would not enable reasonable and fair-minded people to arrive at the verdict reached by the jury here in awarding Kheir $25,000 for mental anguish and suffering. *See Keller,* 168 S.W.3d at 827. We therefore hold that the evidence is legally insufficient to support the jury's award of $25,000, in response to question 6 of the jury charge.

We sustain El–Khoury's second point of error.

### Consequences of Lack of Evidence of Mental Anguish

#### A. Punitive Damages

Well-settled law holds that a party may not recover punitive, or exemplary, damages unless the party recovers actual damages. *E.g., Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). Having concluded that Kheir may not recover the only actual damages awarded by the jury, we are compelled to hold that Kheir may not recover punitive damages. *See id.* Accordingly, we sustain El–Khoury's third point of error, in which he contends that the evidence is legally insufficient to support recovery of $147,000 in punitive damages, in response to question

8 of the jury charge. *See Keller*, 168 S.W.3d at 810 ("situation (b)").

## B. Remand Required

We addressed El–Khoury's second point of error at the outset because rendition of "the judgment that the trial court should have rendered" would ordinarily result from sustaining a legal-sufficiency challenge. *See* Tex.R.App. P. 43.3. Though no evidence supports either the $25,000 damages award or, therefore, the $147,000 punitive damages award, we must remand for new trial in this case because El-Khoury preserved his "no evidence" complaint by moving for a new trial.

■ A party may preserve a legal sufficiency challenge in a motion for new trial. *Cecil*, 804 S.W.2d at 510–11. El–Khoury, however, never sought *rendition* of a different judgment in the trial court on the grounds that no evidence supported the $25,000 awarded for mental anguish damages.[8] *See Werner v. Colwell*, 909 S.W.2d 866, 870 (Tex.1995); *Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993). We may not enlarge the relief preserved through the method that El–Khoury chose and must, therefore, remand for a new trial. *See Werner*, 909 S.W.2d at 870.

In addition, we may not order a separate trial solely on the issue of damages when, as here, the parties contested liability at trial. *See* Tex.R.App. P. 44.1(b); *Willis v. Donnelly*, 199 S.W.3d 262, 276 n. 27 (Tex. 2006) (quoting rule); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex.2001). Lack of legally sufficient evidence to support the jury's award of damages thus necessarily vitiates not only the jury's responses to the actual

and punitive damages questions, but the entire verdict on Kheir's defamation claim. In addition to the jury's damages findings in response to questions 6 and 8 of the charge, the entire verdict on Kheir's defamation claim also includes the jury's finding of defamation, in response to question 5 of the charge, and clear and convincing evidence of malice, in response to question 7 of the charge.

Accordingly, we reverse the judgment of the trial court in its entirety, with respect to Kheir's defamation claim, without addressing the issues raised by El–Khoury's first point of error.

## Agreement to Transfer

■ El–Khoury's fourth point of error challenges the jury's findings relating to the agreement to transfer by contending that the evidence is factually insufficient to support the jury's findings. The jury's findings concerning the agreement to transfer appear in questions 1, 9, 11, and 12 of the charge.

To present a factual-sufficiency challenge on appeal, a party must have preserved the challenge in the trial court in a motion for new trial. Tex.R. Civ. P. 324(b)(2), (3); *Cecil*, 804 S.W.2d at 510; *see also* Tex.R.App. P. 33.1(a)(1) (stating general requirements for preservation of error). El–Khoury challenged the jury's responses to questions 1, 9, 11, and 12 of the charge in his motion for new trial, but solely on the grounds that the responses conflicted. El–Khoury did not argue, as he does in this Court, either that the evidence is factually insufficient to support the findings or that the jury's findings are

---

**8.** Though the concluding prayer for relief in El–Khoury's motion for new trial alternatively requested that the trial court "sign a judgment notwithstanding the verdict," this request pertains to other "no evidence" points presented in the motion for new trial. In the portion of the motion for new trial in which El–Khoury challenges the award of mental anguish damages, he requests only a new trial.

against the great weight and preponderance of the evidence.

We conclude that El–Khoury did not properly preserve his fourth point of error, which we overrule accordingly.

## Attorney's Fees

In his fifth point of error, El–Khoury contends that the trial court abused its discretion by awarding Kheir attorney's fees. Once again, we conclude that El–Khoury did not preserve error, as required by TEX.R.APP. P. 33.1(a)(1). El–Khoury contends on appeal that the trial court abused its discretion because Kheir failed to establish that he was entitled to attorney's fees as are equitable and just, as authorized by the Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). El–Khoury did not present these arguments to the trial court, where he argued, in his motion for new trial, that no statutory authority existed for the attorney's fees award to Kheir.

We overrule El–Khoury's fifth point of error.

## Conclusion

We reverse the portions of the judgment of the trial court that pertain to Kheir's defamation claim and the damages awarded to Kheir pursuant to that claim, including the awards of prejudgment and postjudgment interest. In all other respects, we affirm the judgment of the trial court.

Justice KEYES, concurring and dissenting.

EVELYN V. KEYES, Justice, concurring and dissenting.

I join the panel's opinion on the merits. I dissent solely from the ruling remanding this case to the trial court for retrial despite the holding that the jury's finding of actual damages is supported by no evidence, a ruling the panel acknowledges vitiates the entire verdict.

As the panel opinion states, under the Texas Rules of Appellate Procedure, a legal-sufficiency challenge would ordinarily "result in rendition of the judgment that the trial court should have rendered." *See* TEX.R.APP. P. 43.3. Nevertheless, it concludes, "[t]hough no evidence supports ... the $25,000 damages award ... we must remand for new trial ... because El–Khoury preserved his 'no evidence' complaint by moving for a new trial." The opinion acknowledges that this was a proper means of preserving the issue.[1] However, because appellant preserved his legal sufficiency challenge in a motion for new trial, the panel believes itself bound by the supreme court's rulings in *Werner v. Colwell*, 909 S.W.2d 866 (Tex.1995), and *Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498 (Tex.1993), "not [to] enlarge the relief preserved through the method that El–Khoury chose."[2] *See Werner*, 909 S.W.2d at 870; *Horrocks*, 852 S.W.2d at 499. Therefore, it holds that we must "remand for a new trial."

I would hold that Texas Rule of Appellate Procedure 43.3, effective September 1,

---

1. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991) (holding that an attack based on legal sufficiency of evidence supporting a jury finding may be preserved for appeal by (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the charge; (4) a motion to disregard the finding; or (5) a motion for new trial).

2. In his Motion for New Trial, El–Khoury actually prayed "that this Court set aside the judgment in this cause and order a new trial in the interest of justice and fairness or sign a judgment notwithstanding the verdict for John El–Khoury," thereby requesting rendition of judgment. *See* TEX.R. CIV. P. 300.

1997, controls the disposition of this appeal and that to the extent *Werner* and *Horrocks* conflict with its mandate, these opinions have been overruled by the later-enacted rule. Rule 43.3 provides:

> When reversing a trial court's judgment, the court *must render* the judgment that the trial court should have rendered, *except* when:
>
> (a) a remand is necessary for other proceedings; or
>
> (b) the interests of justice require a remand for another trial.

Tex.R.App. P. 43.3 (eff. Sept. 1, 1997) (emphasis added).

This is not a case where "a remand is necessary for other proceedings," justifying remand under Rule 43.3(a). *See* Tex. R.App. P. 43.3(a). Exactly the opposite is the case: other proceedings are made necessary *solely* by the remand. Indeed, as the panel acknowledges, under the substantive law, "we may not order a separate trial solely on the issue of damages when, as here, the parties contested liability at trial" and "[l]ack of legally sufficient evidence to support the jury award of damages thus necessarily vitiates … the entire verdict on Kheir's defamation claim." Nevertheless, following *Werner* and *Horrocks,* the panel remands the case for a second trial on both damages and liability.

Nor is this a case where "the interests of justice require a remand for another trial," justifying remand under Rule 43.3(b). *See* Tex.R.App. 43.3(b). Again, exactly the opposite is the case: *in* justice is necessarily engendered by remanding this case. Instead of rendition, appellee gets a second bite at the apple in which to try to correct the legal deficiencies that required rendition. If he succeeds, everyone will have been put to the expense of two trials on the same underlying facts with no newly discovered evidence, or other justifying factor, but with conflicting results. If he fails, everyone will have been put to the expense of two trials in a redundant exercise in futility. Remand is, therefore, both wasteful and unjust.

Remand of this case contravenes not only Rule 43.3 but also the mandate of Texas Rule of Civil Procedure 1, which states:

> *The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law.* To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction.

Tex.R. Civ. P. 1 (emphasis added). Proper application of the substantive law in this case requires judgment as a matter of law, for which the proper remedy is rendition. Remand in lieu of rendition elevates the *method of preservation* of a point of law over the substantive requirements of the law.

Since neither of the exceptions justifying remand under Rule 43.3 applies to this case, and since remand contravenes Rule 1 as well, I would render judgment in favor of appellant in accordance with Rule 43.3.

Nor is it clear that the supreme court intended *Horrocks* and *Werner* to have the effect they have had in this case. The supreme court's sole rationale for its holding in *Horrocks*—a per curiam case on which no oral argument was held—was that "[b]ecause the State requested only a new trial on the premises defect theory, that was the only relief to which it was entitled." 852 S.W.2d at 499 (citing to intermediate appellate cases). In *Werner,* the supreme court offered no rationale at all, other than *Horrocks,* for its decision to

remand. It merely stated in a footnote, "[D]espite the fact that there is no evidence to support the verdict, we can only remand for new trial because Eastex did not request rendition of judgment in the trial court,"[3] and it cited to *Horrocks*.[4] *Werner*, 909 S.W.2d at 870 n. 1.

The supreme court has not reiterated the rule in *Horrocks* and *Werner* since 1995, when it decided *Werner*. The only time it has cited to either case on this point since then was its citation to *Horrocks* in *Southwestern Bell Tel. Co. v. Garza* for the proposition that "[o]rdinarily, an appellate court should *render judgment* after sustaining a complaint as to the legal sufficiency of the evidence." *Garza*, 164 S.W.3d 607, 626 n. 58 (Tex.2004) (quoting *Horrocks*, 852 S.W.2d at 499) (emphasis added). *Garza's* statement of the rule in *Horrocks* is misleading if *Horrocks* actually stands for the proposition that an appellate court must *remand* a case for retrial after sustaining a no-evidence complaint preserved only in a motion for new trial. Nevertheless, *Horrocks* and *Werner* continue to be followed by the intermediate courts of appeals, as here, and remands continue to be ordered on rendition cases. *See, e.g., Hassan v. Greater Houston Transp. Co.*, 237 S.W.3d 727 (Tex.App.-Houston [1st Dist.] 2007, mot. for reh'g pending); *Broomfield v. Parker*, No. 12-06-00208-CV, 2007 WL 677819 (Tex.App.-Tyler Mar. 7, 2007, no pet. h.) (mem. op.).

I would hold that to the extent *Horrocks* and *Werner* require remand under the circumstances of this case they were over-ruled by the supreme court's adoption of Rule 43.3. However, should the supreme court determine that *Horrocks* and *Werner* do govern this case and were not overruled by the enactment of Rule 43.3, I urge the court to overrule those cases for the reasons set out above and to mandate that Rule 43.3 be followed in all cases in which rendition of judgment is appropriate.

---

**3.** Notably, *Werner* was a personal injury case in which judgment was had against an employer and an ERISA plan that had numerous procedural defects, including the entry of judgment against the trustee of the plan, who had neither been named as a party nor served, as required to bind the plan. Thus, remand could have been justified even under the exceptions to current Rule 43.3, both be-cause other proceedings were necessary and because justice required remand.

**4.** I reiterate that, in this case, El-Khoury actually did seek rendition in his motion for new trial by requesting that the trial court set aside the judgment and sign a judgment notwithstanding the verdict.