Opinion issued
June 16, 2011



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-10-00017-CV

———————————

Anthony “Tony” Balay Jr. and Balay Builders, Inc., Appellant

V.

Robert
B. Gamble and Ann A. Gamble, Appellee



 



 

On Appeal from the 295th
District Court

Harris County, Texas



Trial
Court Case No. 2006-51860

 



 

MEMORANDUM
OPINION

 

          A
jury found that a homebuilder, Balay Builders, Inc., and its owner, Anthony
Balay, violated the Texas Deceptive Trade Practice Act through
misrepresentations, nondisclosures, and unconscionable conduct, causing the
home owners, Robert and Ann Gamble, damages of $81,000.  The jury also found that such conduct was
committed willfully and therefore awarded additional damages against Balay
Builders and Balay of $25,000 each. 
Balay Builders and Balay (collectively, “Balay”) raise three issues on
appeal.  First, Balay contends that the
evidence of damages is legally insufficient because an improper measure of
damages was submitted to the jury.  It
also claims that the jury’s DTPA liability findings are not supported by legally
and factually sufficient evidence.  Finally,
Balay contends that the trial court erred in allowing Mr. Balay to be impeached
with a document arising from his earlier bankruptcy proceeding.  We affirm.

Background

          The
Gambles were residents of Sugar Land, Texas.  In 2005, they decided to build a retirement home
in Magnolia, Montgomery County, Texas, in the High Meadow Ranch subdivision.  After an initial search for potential
builders, they decided to select a builder from the High Meadow Ranch Preferred
Builder Program, to avoid certain costs associated with the subdivision’s
building and architectural approval process. 
The Gambles narrowed their choices to three potential builders and
received a bid from each.

          During
this process, the Gambles met with Anthony Balay, the owner of Balay Builders,
to discuss the construction of their home. 
The Gambles testified that they chose Balay Builders based on Balay’s oral
representations and written representations through brochures, a website, and a
magazine article.  According to the
Gambles, these representations included Balay’s statements that he was an
experienced custom homebuilder who was building 20 custom homes per year, that
he would personally supervise the construction of the home and provide excellent
supervision of all the subcontractors, that the homeowner was an integral part
of his team during every phase of the construction process, and that a camera
would be continually on the site so the homeowner could always observe the construction
progress.

          Balay submitted a lump sum bid to
build the Gambles’ home for $384,272.00.  Under a lump sum contract, the builder agrees
to build a home as specified for that amount. 
Any changes or upgrades requested by the homeowners could result in an
increase (or decrease) in costs; the change is to be confirmed in a written
change order.  The Gambles signed the
contract with Balay Builders on March 14, 2006. 
Balay contends that the Gambles primarily chose Balay Builders as their
builder based on its status as a High Meadow Ranch Preferred Builder and its
submission of the lowest bid, and not based upon any representations. 

          Shortly after the contract was signed,
the parties began experiencing problems. 
Balay and the Gambles testified to sharply contrasting versions of the
events during the building process.  The
Gambles testified to a wide variety of problems during construction.  According to the Gambles, the first problem
occurred when Balay was doing site preparation work, bringing in an inadequate
amount of fill dirt to prepare a pad for pouring the foundation.  Balay did not supervise the construction site
on a regular basis and often did not know the tasks the subcontractors were performing
until the Gambles informed him.  Balay testified
that he or a supervisor would check on the construction daily but he kept no records
of his attendance at the job site.  Balay’s
approach was to allow the subcontractors to work independently and later return
and fix the work if necessary.  The Gambles
testified that the subcontractors made changes to the construction plans, without
their knowledge.  As an example, the
Gambles identified the guest bathroom, which they specifically designed wider
than standard, with wider doors, to accommodate a family member in a
wheelchair.  The framing subcontractors,
however, framed the bathroom and bathroom door as standard width.  Balay told the Gambles there was an error in
the plans and the framers had to correct it. 

          The Gambles also testified that Balay
was a “solo act”; there was no teamwork. 
As mentioned above, the Gambles stated that Balay was rarely at the
construction site and that his supervisors were both inexperienced and rarely
present.  The Gambles claimed that,
despite Balay’s representations to the contrary, they were not included as part
of the team.  They also claimed that he
was non-responsive.  When construction choices
were available, the Gambles tried to make those decisions early and communicate
them to Balay.  If they had any questions
or concerns about the construction, they emailed Balay.  But Balay rarely responded to emails.  On the contrary, he often hit “reply,” with
no text in the reply email, just to show the Gambles he had received the
email.   

          The Gambles further testified that
camera mentioned in Balay’s promotional materials, although eventually
installed, never worked.  As a result, the
Gambles had to make long trips to Magnolia from their home in Sugar Land or
from Mr. Gamble’s work in downtown Houston just to observe the construction work.
 The Gambles testified that the camera
feature was one of the reasons they chose Balay over the other homebuilders.

          Shortly before the parties terminated
their working relationship, Balay began submitting change orders that required
the Gambles to pay in advance for materials or  additional work.  The contract, in contrast, provides that the
Gambles would be required to pay after approval of a change order and
completion of the work.  The Gambles also
testified that many of these later change orders charged amounts that were many
times the materials’ actual costs.  As an
example, the plans called for either Delta or Moen fixtures in the bathrooms,
but Moen were installed without the Gambles’ knowledge.  When they insisted on Delta fixtures, Balay
sent a change order showing a cost of almost six times the actual costs of the
fixtures.  Also, when the Gambles made a
change that resulted in a $6,000 cost reduction, Balay refused to credit them
with the savings.

          In
contrast, Balay testified that the Gambles immediately began interfering with the
construction.  The Gambles made changes
to the details of the work without submitting or requesting change orders to
modify the contract.  The Gambles ordered
upgraded materials, charging them to Balay, and had materials delivered to the
work site without Balay’s consent, causing delays and cost overruns.  As an example, Balay stated that the extra
dirt was required because the Gambles instructed him to remove virtually every
tree on the lot.  Concerning the plumbing
fixtures, Balay testified that the Gambles changed the fixtures and ordered the
plumbers on site to change all the valves in the house without his approval.  

          Balay and the Gambles had a meeting on
June 23, 2006 concerning the construction progress.  Again, the parties tell vastly different
versions of what occurred at this meeting. 
According to Balay, his assistant, who often took notes of these types
of meetings, took notes of the meeting concerning the construction progress and
other specific issues.  Balay then asked
her to leave the room.  He told the
Gambles that they had to stop doing three things for the construction to
progress smoothly: ordering upgrades
without his approval; ordering delivery of materials to the work site; and
interfering with the subcontractors, such as instructing them to stop working
or to deviate from the plans.  The
Gambles testified that the private second portion of the meeting never
occurred.

          After
this meeting, the relationship continued to deteriorate.  A few weeks later, on July 13, Balay sent a
letter to the Gambles stating he was terminating the contract because the Gambles
failed to pay change orders timely; they interfered
with the subcontractors, causing delays in the construction; they asked
subcontractors to make changes without Balay’s knowledge; and design flaws were
causing delays.  The parties’
relationship did not improve after this letter, and the Gambles filed this suit
shortly thereafter.


The Measure of Damages

          In its second
issue, Balay contends that the trial court erred by denying a motion for
directed verdict because the damages submitted to the jury “only support a
breach of contract claim” and cannot be the basis for a DTPA claim.  A challenge to the denial of a directed
verdict is, in essence, a challenge to the legal sufficiency of the
evidence.  Cleveland Reg’l Med. Ctr., L.P. v. Celtic Properties, L.C., 323 S.W.3d 322, 346 (Tex. App.—Beaumont
2010, pet. filed); Haynes,
& Boone, L.L.P. v. Chason, 81 S.W.3d 307, 309
(Tex. App.—Tyler 2001, pet. denied).  In
reviewing a trial court’s denial of a motion for directed verdict, we are
limited to the specific grounds stated in the motion.  Batra v. Clark, 110 S.W.3d 126, 128 (Tex. App.—Houston [1st Dist.] 2003,
no pet.); Cooper
v. Lyon Fin. Servs., Inc.,
65 S.W.3d 197, 207 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Balay argued in the
motion for directed verdict and argues here that the Gambles’ sole ground for
recovery is a breach of contract claim, not a DTPA action.  

The
DTPA prohibits “[f]alse, misleading, or deceptive acts or practices in the
conduct of any trade or commerce.”  Tex. Bus.
& Comm. Code Ann.
§ 17.46(a) (West 2011).  Section
17.46(b) contains a laundry list of specifically
prohibited acts.  Included in that
laundry list are (1) “representing that goods 
or services have characteristics which they do not have,” (2) “representing
that goods or services are of a particular . . . quality, . . . if they are of
another, ” (3) “representing that an agreement confers or involves rights,
remedies, or obligations which it does not have or involve,” (4) “representing
that a guarantee or warranty confers or involves rights or remedies which it
does not have or involve,”  and (5) “failing to disclose information concerning goods or services
which was known at the time of the transaction if such failure to disclose such
information was intended to induce the consumer into a transaction into which
the consumer would not have entered had the information been disclosed.”  Id.
§ 17.46(b)(5), (7), (12), (20) and (24).  Actionable representations may be oral or written.
 Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 502 (Tex. 2001).  Intent to make a misrepresentation is not
required to recover under section 17.46(b)(5),
(7), and (12).  See id.

          Under section
17.50(a), a DTPA plaintiff may recover “economic damages” for which the
defendant’s misconduct was a producing cause.  Tex. Bus. & Com. Code Ann. § 17.50(a) (West 2011).
 Economic damages include both benefit-of-the-bargain
damages similar to those recoverable for breach of contract and out-of-pocket
damages.  See W.O. Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988) (explaining that
out-of-pocket and benefit-of-the-bargain are two measures
of damages under the DTPA, and noting that a plaintiff may recover the greater
of the two measures).  Additionally, “recovery
under the DTPA is not exclusively limited to only these two types of damages.”  Manon v. Tejas Toyota, Inc., 162 S.W.3d
743, 754 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  Rather, the consumer may recover its “total
loss sustained . . . as a result of the deceptive trade practice,” including
“related and reasonably necessary expenses.”  Id.;
see
D.S.A., Inc. v. Hillsboro Indep. Sch. Dist., 973 S.W.2d at 662, 663–64 (Tex. 1998) (explaining that a
plaintiff can recover, in addition to out-of-pocket-expenses, any loss
otherwise suffered as a consequence of misrepresentations); Henry S. Miller
Co. v. Bynum, 836 S.W.2d
160, 162 (Tex. 1992) (holding that DTPA damages include recovery for “lost
capital investment”).  In other words,
the consumer is “permitted [to recover] other damages to ensure that the
plaintiff is made whole.”  Bynum, 836 S.W.2d at 162.

          In this case,
the jury was asked to answer two elements of damages.  First, the jury was asked the “difference
between the Balay Builders, Inc. contract price and the cost for Robert and Ann
Gamble to complete the construction of the home.”  Next, the jury was asked the “reasonable and
necessary expenses incurred as a result of Balay Builders’ delay, if any, in
releasing the job.”  The Gambles
presented evidence that their damages totaled $163,685.00 and fell into four
general categories: additional costs to complete the construction over and
above the original contract price, costs to repair or replace Balay’s faulty
work, additional interest paid on their construction loan, and miscellaneous
costs (e.g., costs of inspection and replacing an air conditioning unit stolen
before Balay released the property). 
Thus, the Gambles sought damages that covered both
benefit-of-the-bargain and out-of-pocket measure of damages.  These are proper in a DTPA claim.  See W.O. Bankston Nissan, Inc., 754 S.W.2d at 128.   

          Balay
correctly argues that when a plaintiff’s claim arises solely from the failure
of one of the parties to perform on a contract, a DTPA action is
inappropriate.  Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14 (Tex. 1996) (per
curiam); see also Wayne
Duddlesten, Inc. v. Highland Ins. Co., 110 S.W.3d 85, 92 (Tex. App.—Houston
[1st Dist.] 2003, pet. denied) (holding that proof of a failure to comply with
contractual promises “cannot be used to support an action under the DTPA”).  In Crawford, the plaintiff sought to escape
this rule based on the defendant’s misrepresentations that it would perform
under the contract.  The court held, however,
that a misrepresentation that is based on nothing more than a failure to perform
a contractual promise cannot be the basis for a DTPA claim; otherwise, every
breach of contract claim would be converted into a DTPA claim.  Id. 

          The Gambles,
however, presented evidence of more than a misrepresentation of a promise made
in the parties’ contract.  The evidence
included testimony that Balay represented that he would personally oversee the
work, that he had extensive experience, that he was building over 20 homes a
year, and that the Gambles would be a integral part of the team and would have
input during each phase of the building process.  Cf.
A.I.G. Const. Co.,
Inc. v. Thomson,
No. 14-03-00021-CV, 2004 WL 2002556 (Tex. App.—Houston [14th Dist.] Sept. 9,
2004, pet. denied) (finding misrepresentation of a contractor’s expertise and
ability to perform the work supported DTPA claim, and therefore Crawford was inapplicable); Howell Crude Oil Co. v.
Donna Refinery Partners, Ltd., 928 S.W.2d 100, 108–09 (Tex. App.—Houston
[14th Dist.] 1996, writ denied) (distinguishing Crawford when
defendant made affirmative misrepresentation that its crude oil had
sponsorship, approval, characteristics, uses, benefits or quantities that it
did not have and that the parties’ agreement conferred rights or remedies that
it did not and these representations were independent of the contract).  The jury found that Balay engaged in
deceptive acts by making affirmative misrepresentations, failing to
disclose information that should have been disclosed, and acting unconscionably.  This evidence and these findings make Crawford inapplicable.  

          In
one sentence of the brief, Balay argues that the damages found by the
jury only support a breach of contract claim, and therefore the Gambles could
not recover under the DTPA.  Balay does
not cite any case in support of this contention and does not discuss the damages
permitted under contract law or the damages submitted to the jury. This argument,
therefore, is waived.  See Abdelnour v. Mid Nat’l Holdings,
Inc., 190 S.W.3d 237, 241 (Tex. App.—Houston [1st Dist.] 2006, no pet.)
(“Issues on appeal are waived if an appellant fails to support his contention
by citations to appropriate authority . . . .”).

          We overrule
Balay’s second issue.

Sufficiency of the Evidence to Support Finding Balay Violated the DTPA

          In its third
issue, Balay argues that the evidence is legally and factually insufficient to
support an award of damages based on the jury’s findings that Balay violated
the DTPA.  The jury found both that Balay
violated a number of the “laundry list” provisions of section 17.46(b) and that
Balay committed an unconscionable action or course of action.

1.       Laundry
list violations

          Jury question
four is a broad-form jury question that includes five subparts of the laundry
list of actionable conduct under the DTPA. 
Four of those items track misrepresentations that are prohibited by the
DTPA; the fifth inquires whether Balay failed to disclose information that should
have been disclosed.  The question also
asks if Balay engaged in any of the acts listed in the subparts “that [the
Gambles] relied on to their detriment.”

          Balay contends that the Gambles may not recover under the DTPA
because they affirmatively disclaimed reliance on any representations other
than those contained in the contract.  The
construction contract provides, “No other statement, representation or promise
has been made to induce either party to enter into the contract.”  

          A legal
sufficiency point may be preserved by a motion for directed verdict; an
objection to submitting a question to the jury; a motion for judgment
notwithstanding the verdict; a motion to disregard the jury’s answer to a vital
fact issue; or a motion for new trial.  See El-Khoury v. Kheir, 241 S.W.3d
82, 86 (Tex. App.—Houston [1 Dist.] 2007, pet. denied) (citing Cecil v. Smith,
804 S.W.2d 509, 510–11 (Tex. 1991)). 
Balay did not move for judgment notwithstanding the verdict, to
disregard a jury’s answer, or for a new trial. 
Balay did move for a directed verdict; however, Balay did not identify
the element of reliance or request a directed verdict on the basis that
reliance was not proved or was negated as a matter of law by the parties’
contract.[1]  Additionally, Balay’s objections to the jury
charge did not include an objection that the Gambles produced no evidence of
reliance.  Balay also failed to preserve
his factual sufficiency challenge to the reliance finding.  A motion for new trial is a prerequisite to
raising a complaint of factual sufficiency on appeal.  Tex.
R. Civ. P. 324(b)(2); Cecil,
804 S.W.2d at 510.  As noted above, Balay
did not file a motion for new trial. 
Accordingly, we conclude that Balay has not preserved a challenge to the
legal or factual sufficiency of the evidence of reliance.  See Cecil, 804 S.W.2d at 509–10; El-Khoury, 241
S.W.3d at 86.




 

2.       Unconscionability

          Balay also
contends that the evidence is insufficient to support a finding that Balay
engaged in an unconscionable action or course of action.

          Section 17.50 provides that
a consumer may recover under the DTPA for a laundry list violation or an unconscionable action or course of
action.  Tex. Bus. & Comm. Code Ann. §
17.50(a).  Because we have overruled
Balay’s only challenge to the laundry list violations, we may uphold the
judgment based on the laundry list violations and need not address Balay’s
argument concerning the sufficiency of the evidence to support the jury’s
finding on unconscionability.  See Parkway Co. v. Woodruff, 901 S.W.2d 434, 440 (Tex. 1995) (noting
appellate court did not address unconscionability finding when trial court’s
DTPA judgment was upheld on another theory); see also Gillman Imports of San Antonio, Inc. v. Castillo, No.
04-95-00670-CV, 1996 WL 383112, at *5 (Tex. App.—San Antonio July 10, 1996, no
pet.) (citing Parkway and declining
to address jury’s unconscionability finding because judgment could be upheld
based on other DTPA violations).

          We overrule Balay’s third issue.

Use of Bankruptcy Trustee’s
Report

          In its first
issue, Balay argues that the trial court committed reversible error by allowing
the  Gambles’ counsel to read verbatim
from portions of an objection filed by the trustee to Mr. Balay’s chapter seven
bankruptcy. 

          Outside the presence of the jury,
the Gambles offered the bankruptcy trustee’s “Complaint Objecting to
Discharge,” a pleading filed by the trustee in Mr. Balay’s personal bankruptcy
proceeding.   Balay objected that the
complaint had not been produced in response to a document request seeking
“exhibits and demonstrative aids [the Gambles] may use at trial for this
cause.”  Citing  Alvarado v. Farah
Mfg. Co., Inc., 830 S.W.2d 911, 914 (Tex. 1992),
Balay contends that the exclusion of the complaint was mandatory because of the
lack of production.

          We
reject Balay’s contention.  First, the
Gambles objected that the request sought their work product and was “beyond the
scope of permissible discovery.”  The request
did seek counsel’s work product and was overly broad.  Texas Tech Univ. Health Sciences Ctr. v. Schild, 828 S.W.2d 502, 504 (Tex. App.—El
Paso 1992, orig. proceeding) (holding that request for “each and every exhibit”
that opposing counsel might “introduce as evidence” at the trial of the case
sought attorney’s work product and was overly broad).

          Second, Balay did not seek a ruling on
the Gambles’ objection.  “[T]he failure to obtain a pretrial ruling on discovery
disputes that exist before commencement of trial constitutes a waiver of any
claim for sanctions based on that conduct.”  Remington Arms Co. v. Caldwell, 850
S.W.2d 167, 170 (Tex. 1993).  When a
party receives objections to its discovery, its failure to seek a ruling on
those objections waives its right to the requested discovery.  Roberts v. Whitfill,
191 S.W.3d 348, 361 (Tex. App.—Waco 2006, no pet.).  A party cannot sit on an objection and then
seek exclusion of the evidence at trial. 
See Lewis v. W. Waste
Indus., 950 S.W.2d 407, 410 (Tex. App.—Houston [1st Dist.] 1997, no writ); Smith v. O’Neal, 850
S.W.2d 797, 799 (Tex. App.—Houston [14th Dist.] 1993, no writ).

          Finally, we note that any error was
waived by Balay.  The trial court
initially refused to admit the document and also refused to permit counsel to
display or read it to the jury.  Instead,
she permitted the Gambles’ counsel to provide the document to Mr. Balay for him
to read to himself and refresh his recollection about matters involved in his
bankruptcy.  As counsel began to ask him
to read portions of the document to himself and to refresh his recollection,
Mr. Balay stated that he preferred for the Gambles’ counsel to read it aloud to
the jury.  Only at that point did the
trial court allow the exhibit to be read to the jury.

          We overrule Balay’s first issue. 


Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel consists of Justices
Higley, Brown, and Halbach.[2]











[1]           The closest Balay came to identifying
reliance as an element on which the Gambles had presented no evidence came as
part of its directed verdict that the Gambles should be limited to a breach of
contract cause of action and not a DTPA cause of action.  Balay argued in pertinent part:

 

            We
have a cite for this, Your Honor, the Crawford
v. Ace Sign case, 917 S.W.2d 12, Texas Supreme Court, 1996.  It says that if a plaintiff’s claims under
the DTPA arise sole under the failure of one of the parties to perform on a
contract, then the claim is inappropriate under the DTPA.

 

            . . .
. 

 

            And
so the problem that the plaintiffs will have on this point is Mr. Gamble
testified that he had read and understood the -- the integration or merger
clauses in the various contracts, that there were no oral representations,
there were no warranties outside the contract that induced him. So the only
thing is the contractual language.  So
it’s purely breach of contract.





[2]           The Honorable Tad Halbach, Judge of
the 333rd District Court of Harris County, participating by assignment.