Opinion filed November 9, 2006

















 
 
  
 
 







 
 
  
 
 




Opinion filed November 9, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-04-00272-CV 

                                                    __________

 

                                     DAVID H. GIRDNER, Appellant

                                                             V.

               THOMAS
E. ROSE AND MARGIE C. GRISSOM, Appellees

 



 

                                          On
Appeal from the 42nd District Court

                                                          Taylor County,
Texas

                                                 Trial
Court Cause No. 45,410-A

 



 

                                                                   O
P I N I O N

 

This is a declaratory judgment action concerning
the parties= rights
to commercial property in downtown Abilene.  The trial court conducted a bench trial,
found that David H. Girdner had no right or claim to the disputed property, and
awarded Thomas E. Rose and Margie C. Grissom damages.  We modify two damage calculations and, as
modified, affirm the judgment.

                                                             I.  Background Facts

Charles A. (Charlie) and Margie Grissom owned and
operated D & W Furniture in Abilene, Texas, for approximately thirty
years.  The Grissoms also owned warehouse
and storefront space across the street from the furniture store.  Girdner rented a portion of this space to
operate a funeral home.








Girdner alleged that, when he first began
operating the funeral home, he discussed a lease with an option to purchase
with Charlie.  Girdner told Charlie that
he could not enter into a lease until the roof was repaired.  Charlie replaced the roof and, according to
Girdner, presented him with a lease agreement that included an option to
purchase the funeral home property and a portion of the warehouse for $65,000,
with seller financing.  Girdner testified
that the lease was executed in October 1997 and that he took his copy to a
local attorney=s office
for safekeeping.

Charlie passed away in early 2001.  Margie sold the furniture store to Thomas E.
Rose, a D & W employee, in September 2001. 
In November, she sold the warehouse to Rose, and she offered to sell the
funeral home property to Girdner for $125,000. 
Girdner declined the offer and, approximately two months later, mailed
her a letter referencing the lease and stating his intentions to exercise its
purchase option.

Girdner then filed a declaratory judgment action
against Margie and Rose to determine his rights to lots 9, 10, 11, and 12.  The funeral home was located on lots 11 and
12.  Lots 9 and 10 were the warehouse
space on which Girdner claimed to have an option.  Margie and Rose counterclaimed, seeking
reciprocal declaratory relief, contractual damages, and exemplary damages.  Girdner began making his rent payments by
check with the notation ALease
Lots 9, 10, 11 and 12.@  Margie did not negotiate the checks because
of the conditional notation.[1]

The trial court conducted a bench trial and found
that Rose owned the warehouse and awarded him $4,800 for unpaid rent, $8,500
for attorney=s fees,
and conditional attorney=s
fees in the event of an appeal.  The
court further found that Margie owned the funeral home property and awarded her
$25,250 for unpaid rent and roofing expenses, $100,000 in exemplary damages,
attorney=s fees of
$35,250, and conditional attorney=s
fees in the event of an appeal.

                                                                       II.  Issues

Girdner originally challenged the trial court=s judgment with six issues, alleging
the trial court abused its discretion by:

$          denying
his jury request,

$          denying
him the opportunity to seek written discovery,








$          awarding
exemplary damages without an award of actual damages, and

$          awarding
attorney=s fees to
Rose and Margie.

Girdner=s
third issue complained of the trial court=s
failure to file findings of fact and conclusions of law.  The trial court subsequently filed findings
of fact.  Issue three, therefore, is
overruled as moot.  Girdner responded to
the trial court=s fact
findings with a supplemental brief challenging the sufficiency of several of
those findings.

                                                            III.
Standard of Review

A trial court abuses its discretion if it acts
without reference to any guiding rules or principles or acts in an arbitrary or
unreasonable manner.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
When reviewing matters committed to a trial court=s
discretion, an appellate court may not substitute its own judgment for that of
the trial court.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex.
1992).  Nor may a reviewing court set
aside the trial court=s
determination unless it is clear from the record that the trial court could
only reach one decision.  Id. at 840.  Our review of a trial court=s determination of the legal principles
controlling its ruling is much less deferential.  A trial court has no discretion in
determining what the law is or in applying the law to the facts.  Id.  Thus, a clear failure by the trial court to analyze
or apply the law correctly will constitute an abuse of discretion.  Id.

                                                                   IV.
Discussion

Did the Trial Court Abuse Its Discretion By
Denying Girdner a Jury Trial?

Girdner filed suit in March 2002.  The case was originally set for a nonjury
trial on October 27, 2003.  Girdner=s counsel had a scheduling conflict,
and the setting was moved to November. 
Girdner then filed a motion for continuance because of a conflicting
trial setting.  The trial court granted
his motion and reset the trial for February 2004.

In January, Girdner filed an amended petition
adding claims of tortious interference and conspiracy.  He also served several written discovery
requests and notices to depose Margie and Rose. 
The written discovery responses were due one day before trial, and the
depositions were scheduled to start four days later.  In February, Girdner filed his second motion
for continuance because of a conflicting trial setting.








Margie opposed the continuance and objected to the
discovery requests.  The trial court
continued the trial until April 2004, allowed Girdner to depose Margie and
Rose, but disallowed any other discovery except the supplementation of prior
discovery responses.

The case was not reached in April, and it was
reset for June 2004.  In late April,
Girdner filed another amended petition. 
This petition added Kyle Brown and Girdner-Brown Funeral Home as
additional plaintiffs, asserted property damage claims from a recent fire, and
for the first time requested a jury trial. 
Margie objected to the jury request and moved to strike or sever the new
claims.  The trial court severed the new
claims and retained the June nonjury setting.

Girdner complains that this decision improperly
denied him a jury trial because he complied with Tex. R. Civ. P. 216(a) by making a written jury request more
than thirty days before trial was scheduled to begin.  Rule 216(a) governs jury requests and
provides:

No jury trial shall be had in any civil suit,
unless a written request for a jury trial is filed with the clerk of the court
a reasonable time before the date set for trial of the cause on the non-jury
docket, but not less than thirty days in advance.

 

Girdner=s
request is presumed timely because it was made approximately forty-one days
before trial.  Halsell v. Dehoyos,
810 S.W.2d 371, 371 (Tex.
1991). Trial courts, however, are not required to honor every jury request
simply because it is received more than thirty days before trial.  Courts have the discretion to determine what
is a reasonable amount of time dependent upon the individual circumstances of
each case.  See Wittie v. Skees,
786 S.W.2d 464, 466 (Tex. App.CHouston
[14th Dist.] 1990, writ denied).  The
party opposing a jury request may rebut the presumption of reasonableness by
showing that a jury trial will injure them, disrupt the trial court=s docket, or impede the ordinary
handling of the court=s
business.  Crittenden v. Crittenden,
52 S.W.3d 768, 769 (Tex.
App.CSan
Antonio 2001, pet. denied).








The trial court found that Girdner=s request was untimely because it was
made more than two years after suit was filed and less than forty-five days
before the fifth setting.  The court
concluded that the request was a dilatory tactic which would have delayed the
trial and injured Margie and Rose.  We
cannot say that the trial court abused its discretion because the record
adequately supports these conclusions. The trial court passed one setting at
Girdner=s request
and granted him two other continuances. 
Earlier in the year, Girdner filed an amended pleading and served
discovery requests shortly before one setting that contributed to its
delay.  Margie could not negotiate
Girdner=s rent
checks because of his conditional notation. 
Even though they were being deposited into the registry of the court,
every check was returned by the bank because of insufficient funds or because
it was stale.  Girdner, therefore, was
effectively using the disputed property rent-free during the pendency of the
litigation.  Issue one is overruled.

Did the Trial Court Abuse Its Discretion By Denying Girdner 

the Opportunity to Conduct
Written Discovery?

 

Discovery was conducted under level two.  Tex.
R. Civ. P. 190.3.  This rule
provides that discovery ends the earlier of thirty days before trial, nine
months after the first oral deposition, or nine months after the due date of
the first response to written discovery. 
The earliest written discovery included in the record is Margie=s second set of interrogatories and
request for production, which were served on February 27, 2003.  Because these were her second set of
requests, the discovery deadline would have been established with an earlier
request.  But even using these, the
discovery deadline was December 29, 2003.[2]  

Rule 190.3 requires that discovery shall be completed
by the discovery deadline.  To comply
with this, Girdner was required to serve his written discovery requests by
November 28, 2003.  Girdner=s written discovery requests were not
served until January 14, 2004, and his deposition notices were not served until
February 5, 2004.

The trial court allowed Girdner to take the
noticed depositions B
and continued the trial setting to accommodate the depositions B 
but did not require Margie or Rose to answer the written discovery
requests.  Girdner complains this
constitutes an abuse of discretion but offers no reason why he was unable to
timely serve his written discovery requests. 
He notes that there was no pretrial order establishing discovery
deadlines, but the Texas Rules of Civil Procedure are controlling.  Girdner chose this schedule by pleading in
his original petition that discovery would be conducted under level two.  On this record, we cannot say the trial court
abused its discretion.  Issue two is
overruled.

Did the Trial Court Err by Awarding Exemplary
Damages?








Margie sought exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code Ann. ' 12.002 (Vernon 2002), AChapter 12.@  This statute forbids the fraudulent use of a
document or other record to evidence a lien or claim against real or personal
property with the intent to cause another to suffer physical injury, financial
injury, mental anguish, or emotional distress. 
The statute authorizes an award of actual damages, court costs, attorney=s fees, and Aexemplary
damages in an amount determined by the court.@  

The trial court found that Girdner violated
Chapter 12 by knowingly using a document to assert a fraudulent claim against
real property with the intent to cause another person financial injury and that
Margie lost rental income and incurred attorney=s
fees.  The trial court awarded Margie
$100,000 in punitive damages, $25,250 for unpaid rent and unreimbursed roofing
expenses, and attorney=s
fees.

Girdner originally challenged the punitive damage
award solely on the basis that the trial court erred by awarding punitive
damages under Chapter 12 because it awarded no actual damages under Chapter
12.  Subsequent to the parties= original briefing, the trial court
filed findings of fact.  Girdner
responded to the findings of fact with a supplemental brief challenging the
Chapter 12 findings because they are Awithout
evidentiary basis@ and in
his prayer asks this court to reverse the trial court=s
judgment and remand the case for a retrial. 
We will treat his supplemental brief as a factual sufficiency challenge
and will review the punitive damage award for factual sufficiency and legal
authorization.

A trial court=s
findings of fact in a bench trial are reviewed for legal and factual
sufficiency under the same standards used to review a jury=s verdict on jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). 
In reviewing factual sufficiency, we consider all of the evidence and
uphold the finding unless the evidence is too weak to support it or the finding
is so against the overwhelming weight of the evidence as to be manifestly
unjust.  Westech Eng=g, Inc. v. Clearwater Constructors,
Inc., a Div. of Phelps, Inc., 835 S.W.2d 190, 196 (Tex. App.CAustin 1992, no writ).  The trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  Cohn v. Comm=n
for Lawyer Discipline, 979 S.W.2d 694, 696 (Tex. App.CHouston [14th Dist.] 1998, no pet.).

With respect to the Chapter 12 claim, the trial
court found:

16.  That
David Girdner violated Chapter 12 of the Civil Practice and Remedies Code by
knowingly using a document to assert a fraudulent claim against real property
with the intent to cause another person financial injury.

 








17.  That because of David
Girdner=s action
in violation of Chapter 12 of the Civil Practice and Remedies Code, Margie
Grissom lost rental income and incurred attorney=s
fees.

 

18.  That Margie Grissom is
entitled to exemplary damages in the amount of $100,000 because of David Girdner=s actions in violation of Chapter 12 of
the Civil Practice and Remedies Code.

 

Girdner claimed an interest in four lots because
of a lease with an option to purchase he claimed to have negotiated with
Charlie.  The evidence sufficiently
establishes that no lease was ever executed. 
First, Girdner could not produce a copy of an executed lease
agreement.  The original draft lease was
prepared by Charlie and Margie=s
daughter-in-law, Carol Grissom, who is an attorney.  She testified that she prepared one draft and
that shortly thereafter Charlie told her he was not going through with the
deal.  She also testified that the
unexecuted lease agreement Girdner produced at trial was not the one she
drafted.

Girdner explained the lack of an executed lease by
saying that his former attorney lost it when he moved and contended that he had
spent $73,000 remodeling the property in reliance on a lease.  The court was entitled to discount this testimony.  Girdner was impeached with his deposition
testimony wherein he testified that he had spent only $25,000 and that  the remodeling work started before the lease
was signed.  Furthermore, Girdner=s former attorney did not testify.  The testimony concerning his records came
from Girdner=s
partner, Kyle Brown, who was working for Girdner=s
attorney as a paralegal at the time.

 Second,
there was evidence that Charlie was incapable of signing a document.  He was diagnosed with multiple sclerosis in
1978.  Several witnesses testified that
he was physically incapable of signing anything by 1990 and that he had not
signed anything in years.

Finally, Girdner=s
conduct in 2001 was inconsistent with his lease claim.  Girdner and Margie discussed buying the
funeral home property twice in 2001. 
Even though he claimed to have an option to purchase four lots for
$65,000 and she was offering two lots for $125,000, he did not raise the lease
agreement during either meeting.  During
their last meeting when she asked for $125,000, he simply inquired if she would
finance that price.  His only explanation
at trial for this silence was that he assumed she knew about the lease
agreement.  The court could reasonably
discount that testimony.








The evidence also sufficiently established that
Girdner=s actions
caused Margie to lose rental income and incur attorney=s
fees.  Margie suffered from multiple
sclerosis.  Charlie had recently passed
away, and she was attempting to sell her Abilene
property and move to Weatherford.  When
Margie refused to finance Girdner=s
purchase, he sent notice of his intention to exercise the lease=s purchase option, and he filed a
declaratory judgment action.  He also
began placing the notation ALease
Lots 9, 10, 11 and 12@
on his rent checks that prevented Margie from negotiating them.  Eventually, the checks were given to the
district clerk=s office
for deposit in the registry of the court, 
but every check was returned either because of insufficient funds or
because it was stale.  Girdner,
therefore, used the property rent-free during the period of time he claimed an
interest. Girdner=s factual
sufficiency challenge to the punitive damage award is overruled.

We must next decide if the trial court erred by
awarding exemplary damages under Chapter 12 without making a specific Chapter 12
actual damage finding.  Because the trial
court found that the conduct which justified punitive damages also caused
actual damage and because the evidence of actual damage is directly and
singularly attributable to that conduct, we conclude the trial court=s award was appropriate.

Margie concedes that the general rule is that
actual damages are a prerequisite to an exemplary damage award.  See Wright v. Gifford-Hill & Co.,
725 S.W.2d 712, 714 (Tex.
1987). The supreme court has instructed reviewing courts that exemplary damages
must be reasonable and proportionate to the amount of harm to the plaintiff and
the general damages recovered.  State
Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003).  This indicates that at the very least the
conduct justifying punitive damages must have also caused actual damage.








The trial court found that Girdner=s conduct caused Margie to suffer lost
income but did not specifically state that this lost income was the unpaid rent
it awarded Margie.  However, the two are
necessarily the same because Margie did not claim that Girdner owed her for
rent due prior to his attempted option exercise.  Her claim was limited to the time period
after Girdner attempted to exercise a purchase option and began placing a
conditional notation on his checks.  This
notation and his failure to make the checks good allowed him to use the
property rent-free during the litigation. 
The cloud his claim created on her title necessarily prevented her from
otherwise using the property. 
Consequently, the trial court=s
unpaid rent finding is attributable to the same conduct which justified a
Chapter 12 punitive damage award, and it was appropriate for the trial court to
award exemplary damages.  Girdner=s fourth issue is overruled.

Did the Trial Court Abuse Its Discretion by
Awarding Rose and Margie Attorney=s
Fees?

Girdner argues initially that an attorney=s fee award was inappropriate because
he was not given notice as required by Tex.
Civ. Prac. & Rem. Code Ann. '
38.002 (Vernon
1997).  First, this issue was not
preserved for review because Girdner made no objection at trial.  Second, Section 38.002 applies to contractual
claims.  Margie and Rose successfully
asserted declaratory judgment claims, and Margie prevailed on her Chapter 12
claim.  Because these claims also
authorize attorney=s fees,
even if Girdner=s
contention is correct, it is not dispositive.

Girdner next argues that Rose was not successful
on all counts of his counterclaim and that he failed to segregate the time he
spent on the various claims.  He argues
further that Rose=s counsel
failed to produce sufficient evidence justifying the amount of the award and
that it was unreasonable to award $8,500 in fees when Rose was only awarded
unpaid rents of $4,800.

The Declaratory Judgments Act, Tex. Civ. Prac. &  Rem. Code Ann. ' 37.009 (Vernon 1997), provides that trial courts may
award reasonable and necessary attorney=s
fees as are equitable and just.  The
decision to grant or deny attorney=s
fees is within the trial court=s
sound discretion.  Oake v. Collin County,
692 S.W.2d 454, 455 (Tex.
1985).  If attorney=s fees are authorized for some, but not
all, of a party=s claims,
that party generally has the duty to segregate the recoverable attorney=s fees from the unrecoverable attorney=s fees. 
Stewart Title Guar. Co. v. Sterling,
822 S.W.2d 1, 10-11 (Tex.
1991).  This general rule is subject to
an exception.  A party is not required to
segregate attorney=s fees
incurred in litigating different claims if the claims involve the same set of
facts or circumstances and are intertwined to the point of being
inseparable.  Gage Van Horn &
Assocs., Inc. v. Tatom, 26 S.W.3d 730, 733 (Tex. App.CEastland
2000), pet. denied, 87 S.W.3d 536 (Tex. 2002). 
The exception is applicable in this case.  While the parties alleged several claims and
causes of action, each involved the same issue: 
Did Girdner and Charlie execute a written lease with an option to
purchase?  Rose=s
counsel was not required to segregate his time between each of the claims and
causes of action.  Nor is his recovery
defeated simply because he only recovered $4,800 in unpaid rents.  Rose also successfully removed a cloud on his
title.








Finally, Rose introduced sufficient evidence to
support the award.  His attorney
testified that  the hourly rate he
charged was reasonable and that he had incurred 57 hours of billable time.  He described the type of activities he had
undertaken in his representation of Rose and testified that his services were
necessary.  His testimony was brief, but
the trial court was well positioned to ascertain the reasonableness and
necessity of counsel=s
services.  The trial court did take a
critical look at the attorney=s
fee requests.  We note that the trial
court=s
attorney=s fee
awards did not include the costs Rose=s
or Margie=s counsel
testified were incurred.

Girdner makes similar challenges to Margie=s attorney=s
fee award.  Margie=s
counsel was not required to segregate his time because the case essentially
involved only one issue.  The issue of
whether adequate notice was given has not been preserved and, because of the
alternative basis for an award of attorney=s
fees, is not dispositive in any event. Counsel=s
testimony was brief, but as noted, this was a bench trial.  The hourly rate Margie=s
counsel quoted was less than the hourly rate Girdner=s
counsel testified to during his case-in-chief, the activities he conducted were
described similarly, and the time he testified to was comparable.

The trial court=s
attorney=s fee
awards do not constitute an abuse of discretion.  The trial court had ample information to
determine that the requested fees were reasonable and necessary, and in light
of the relief obtained, the awards are equitable and just.  Issues five and six are overruled.

Are the Trial Court=s Remaining Findings Supported by
Sufficient Evidence?

Girdner=s
supplemental brief contains several additional factual sufficiency
challenges.  Girdner contends there is
insufficient evidence establishing when Rose acquired Lots 9 and 10 and, thus,
insufficient evidence to determine the amount of rent Rose was entitled to
receive.  The warranty deed with vendor=s lien transferring Lots 4 through 10
from Margie to Rose was introduced into evidence as Plaintiff=s Exhibit No. 18.  This document establishes that Rose acquired
Lots 9 and 10 on November 26, 2001. 
Girdner=s
challenge is overruled.

Girdner contends that he agreed to pay $750 per
month beginning February 1, 2002, for Lots 9, 10, 11, and 12 and that his
obligation to Margie should reflect a credit for Lots 9 and 10 from the date of
Rose=s
acquisition.  This is a defensive issue
that was not raised before the trial court and may not be raised for the first
time on appeal.  Furthermore, there was
ample evidence that his rent payment was for Lots 11 and 12 and that the
Grissoms simply allowed him to use a portion of the warehouse space.  This challenge is overruled.








Girdner complains of the trial court=s unpaid roofing expense finding,
contending that the only evidence to support the unpaid roofing expense finding
was that the new roof cost $5,000 and that he only agreed to pay one-half of
that amount.  Notes from Kyle Brown,
Girdner=s
partner, were read into evidence.  These
notes indicate that Charlie re-roofed the building at his expense with a verbal
agreement that Girdner would reimburse him. 
The invoice for this job was introduced into evidence and established
that Charlie paid $5,933.18.  The trial
court awarded Margie $3,500 for unpaid roofing expenses.  Because it was undisputed that Girdner had
paid $2,500 prior to trial, the trial court=s
award is incorrect and should be modified to $3,433.18.  As modified, this finding is affirmed, and
Girdner=s
challenge is overruled.

Finally, Girdner complains that the evidence is
insufficient to support the finding that he owed Margie $25,450 for unpaid
rents because the trial court=s
findings do not state the time for which these rents were due.  Girdner himself testified that he owed Margie
$750 per month from February 1, 2002, through trial.  The trial court=s
judgment is dated July 22, 2004.  Margie
concedes that the rental for this period of time was actually only $21,750 and
that the trial court=s
award erroneously included roofing expenses. 
Because these expenses cannot be awarded twice, the unpaid rental award
is modified to $21,750 and, as modified, is affirmed.  Girdner=s
challenge is overruled.

The Texas Supreme Court has indicated that we
should automatically reevaluate exemplary damages when compensatory damages are
reduced.  See Bunton v. Bentley,
153 S.W.3d 50, 54 (Tex.
2004).  Our adjustment is relatively
minor.  After adjustment, the ratio
between the compensatory damages and exemplary damages is approximately 4:1 if
the attorney=s fees
for trial are excluded and approximately 1.6:1 if included.  Because of the gravity of Girdner=s conduct as discussed in this opinion,
the punitive damage award is not grossly disproportionate.  

                                                                     V.  Holding

The judgment of the trial court is modified to
award Margie $3,433.18 in unpaid roofing expenses and $21,750 for unpaid
rent.  In all other respects, the
judgment is affirmed.

 

 

RICK STRANGE

JUSTICE

November 9, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











[1]The trial court ultimately entered an order allowing
Margie to deposit the checks into the registry of the court without prejudice
to her rights.





[2]December 27, 2003, was a Saturday.