# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00315-CV

CS Custom Homes, LLC d/b/a Callahan Custom Homes, LLC d/b/a Callahan Homes, LLC and Ervin E. Callahan, Appellants

v.

Jessica Nicole W. Stafford, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-09-003613, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## MEMORANDUM OPINION

The principal issue in this residential-construction dispute concerns whether the plaintiff homeowner was entitled to recover "reasonable and necessary costs of repair" that included out-of-pocket costs paid to a structural engineer to identify construction defects and craft solutions. On this record, we conclude that she was not.

The plaintiff homeowner, Jessica Nicole W. Stafford, appellee here, contracted with appellant CS Custom Homes, LLC, to construct a house for her. To summarize the ensuing events, the project did not go smoothly for either party, and Stafford eventually sued CS; CS's owner, appellant Ervin E. Callahan; and various subcontractors involved with the project, seeking damages she attributed to numerous asserted construction defects. Stafford eventually settled with or nonsuited all defendants except appellants, and these remaining claims were tried to a jury. The jury found Callahan and CS liable under DTPA, negligence, and contract theories, and awarded Stafford

$317,074.64 in actual damages and (predicated on the findings of DTPA and contract liability) $183,085.00 in attorney's fees.[1]  Further, predicated on a finding that appellants had violated the DTPA "knowingly," the jury awarded Stafford $1,200.00 in DTPA additional damages.

Of central importance to this appeal, the district court had submitted actual damages for all liability theories in a single question that asked the jury to determine two specific elements separately:  (1) "[t]he reasonable and necessary costs of repair;" and (2) "NICOLE STAFFORD'S loss of use of the house."[2]  Neither party objected to or otherwise preserved any complaint of error in

---

[1]  The negligence and DTPA liability questions inquired only as to Callahan's conduct, but the parties had stipulated that CS was vicariously liable for Callahan's acts.

[2]  The damages question, predicated on an affirmative answer as to any of the preceding liability questions, stated in full:

> **What sum of money, if any, if paid now in cash, would fairly and reasonably compensate NICOLE STAFFORD for her injury, loss, harm, or damage, if any, that resulted from such conduct?**
>
> Consider the below elements of damages, if any, and none other.  Answer separately in dollars and cents, if any, for each element.  In answering questions about damages, answer each question separately.  Do not increase or reduce the amount in one answer because of your answer to any other question about damages.  Do not speculate about what any party's ultimate recovery may or may not be.  Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.  Do not add any amount for interest on damages, if any.  You shall not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.  That is, do not compensate twice for the same loss, if any.  Do not include in your answer any amount that you find NICOLE STAFFORD could have avoided by the exercise of reasonable care.
>
> The reasonable and necessary costs of repair.
>
> Answer:        $_____

2

the form of the damages question.  The jury found zero "loss of use" damages but $317,074.64—the entirety of its actual-damages award—as the "reasonable and necessary costs of repair."  To establish these damages, Stafford had relied on proof that she had incurred three basic categories of expenses:

- $65,000 she had paid to a structural engineer, Andre Garner and his firm, Garner Consulting Group, to examine the construction, identify perceived defects, and design proposed solutions (a/k/a the "Garner expenses").[3]

- $193,880 she had paid to a contractor, Louis Hausman, to remove, repair and/or reconstruct portions of the construction deemed deficient (the "Hausman expenses").

- Additional amounts that she had paid to approximately ten other service providers or vendors involved in the repair and reconstruction (the "non-Hausman, non-Garner expenses").

Stafford's proof consisted in part of cancelled checks reflecting her payments, and this was essentially the only proof of the non-Hausman, non-Garner expenses.  However, the checks written to Garner were also accompanied by invoices detailing the work for which he was charging, and both Garner and Hausman testified live at trial.  While each explained the nature of the work he and his firm had performed and confirmed that Stafford had paid for it, neither was asked to address, in so many words, the "necessity" of that work or the "reasonableness" of the charges assessed for it.

---

NICOLE STAFFORD's loss of use of the house.

Answer:        $_____

[3] The jury also heard evidence that Stafford had paid Garner additional sums for services provided in the litigation itself and for engineering services beyond appellants' original scope of work.  Stafford conceded that she was not entitled to recover these additional sums as costs of repair, and the parties eventually agreed that the remaining Garner expenses Stafford attributed to the identification and remediation of perceived construction defects totaled $65,000.

Following the verdict, appellants moved the district court to disregard the jury's actual damages finding to the extent it awarded sums exceeding the $193,880 Stafford had paid to Hausman. Emphasizing the Texas Supreme Court's *McGinty* decision,[4] appellants urged that Stafford had presented evidence merely of the fact that she had incurred the Garner and non-Hausman, non-Garner expenses, not that these expenses were reasonable and necessary. In response, Stafford insisted that the DTPA permitted her to recover her repair costs without proving reasonableness or necessity.[5] In the alternative, she urged that the substance of Garner's testimony, at least, had provided sufficient evidence from which the jury could infer the reasonableness and necessity of those expenses.

In addition to attacking the sufficiency of the evidence supporting the jury's award of the Garner expenses, appellants maintained that Stafford had waived her right to recover the Garner expenses altogether by failing to obtain (or preserve any complaint regarding the omission of) a jury submission of "reasonable and necessary engineering costs" as an element of damages distinct from the "reasonable and necessary costs of repair" that had been submitted. Stafford disputed that she had any obligation to do so—if anything, she suggested, it was appellants who had waived what amounted to a post-verdict complaint of charge error.

---

[4] *McGinty v. Hennen*, 372 S.W.3d 625, 627-28 (Tex. 2012) (per curiam) (party seeking to recover remedial damages must prove the reasonableness and necessity of such expenses). *See also Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200-01 (Tex. 2004) (per curiam) (same); *Dallas Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 383 (Tex. 1956) (same).

[5] *See Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 176-77 (Tex. 1988) (Kilgarlin, J., concurring, joined by Ray, J.) (arguing that "proof of reasonableness and necessity is not required under the DTPA").

The district court rejected Stafford's view that she could recover repair costs without proving their reasonableness and necessity. Observing that Stafford had all but conceded the absence of such proof regarding the non-Hausman, non-Garner expenses, the court held that Stafford was not entitled to recover them. But with respect to the Garner expenses, the district court recalled that Garner had testified about his services in sufficient detail to suffice as evidence that his charges had been reasonable and necessary.[6] The court further concluded that appellants' waiver theory was without merit. Accordingly, the district court determined that Stafford was entitled to actual damages in an amount equal to "Hausman plus Garner"—$258,880.

Stafford had moved for judgment solely on her DTPA and negligence theories, and the district court rendered judgment that appellants were jointly and severally liable under both of those theories. In lieu of suggesting a remittitur of the excess of the damages found by the jury over that determined by the court, the district court, with the consent of both sides, proceeded simply to award Stafford damages in the reduced amount of $258,880, with a further reduction of $91,500 to reflect lump-sum settlement credits, yielding $167,380. The court also awarded the DTPA additional damages and attorney's fees found by the jury. Following the judgment, appellants filed a motion for new trial urging, among other grounds, that the evidence was factually insufficient to support the total amount of the jury's attorney's fees award now that the non-Hausman, non-Garner expenses

---

[6] As an aside, the district court acknowledged its concern that it had conducted "several trials" during a two-week interim between the jury's verdict and the hearing on entry of judgment, intervening events that "ma[d]e it more difficult for me to remember every jot and tittle of a record." Similarly, the court noted that it did not yet have the benefit of a reporter's record from trial.

had been eliminated from the actual damages award.[7] Appellants' new-trial motion was overruled by operation of law,[8] and they perfected this appeal.

In their first of four issues on appeal, appellants bring forward their contention that Stafford failed to present any evidence that the Garner expenses were reasonable and necessary. In their second issue, appellants similarly reurge that Stafford waived recovery of the Garner expenses by failing to seek or obtain a jury submission of "reasonable and necessary engineering costs" as an element of damages distinct from "reasonable and necessary costs of repair." Because the second issue logically precedes the first, we will address them in reverse order.

Appellants' insistence on a discrete "engineering costs" submission rests on the premise that such costs are distinct from "costs of repair" as a matter of law. This is so, appellants reason, because the Residential Construction Liability Act (RCLA),[9] which undisputedly governs Stafford's suit,[10] currently differentiates between "the reasonable cost of repairs necessary to cure any construction defect" and "reasonable and necessary engineering and consulting fees" when enumerating the categories of economic damages that may be recovered under the Act.[11] It follows,

---

[7] *See Barker v. Eckman*, 213 S.W.3d 306, 313-14 (Tex. 2006).

[8] *See* Tex. R. Civ. P. 329b(c).

[9] *See generally* Tex. Prop. Code §§ 27.001–.007.

[10] *Id.* § 27.002(1) (RCLA governs "any action to recover damages or other relief arising from a construction defect, except a claim for personal injury, survival, or wrongful death or for damage to goods"); *see id*. § 27.001(4) ("'construction defect' . . . means a matter concerning the design, construction, or repair of a new residence.").

[11] The RCLA permits recovery of "only the following economic damages proximately caused by a construction defect":

in appellants' view, that the Garner expenses were "engineering fees," not "cost of repairs," and could not be awarded by the jury in the guise of "cost of repairs." If Stafford desired to recover the Garner expenses, according to appellants, she was required to obtain a separate submission of "reasonable and necessary engineering fees." And because she neither did so nor preserved any complaint with the district court's failure to do so, appellants deduce that Stafford has waived any right to recover those expenses.

Appellants' arguments fail for at least two related reasons. First, whatever the scope of "cost of repairs" vis-à-vis "engineering fees" might be under the RCLA,[12] *the jury* was never informed of that meaning or relationship—instead, the damages question as submitted left "[t]he reasonable and necessary costs of repair" undefined. The sole pertinent guidance found anywhere in the charge was a prefatory general instruction indicating that the jury should apply the "ordinary meaning" of words in the absence of a technical definition.[13] Second, the ordinary meaning of "costs

(1)     *the reasonable cost of repairs necessary to cure any construction defect*;
(2)     the reasonable and necessary cost for the replacement or repair of any damaged goods in the residence;
(3)     *reasonable and necessary engineering and consulting fees*;
(4)     the reasonable expenses of temporary housing reasonably necessary during the repair period;
(5)     the reduction in current market value, if any, after the construction defect is repaired if the construction defect is a structural failure; and
(6)     reasonable and necessary attorney's fees.

*Id.* § 27.004(g) (emphases added).

[12] As Stafford points out, however, the RCLA does not purport to create a sui generis cause of action or theory of recovery, but regulates claims and remedies already provided by background law. *See id.* § 27.005.

[13] That instruction stated, "If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition."

7

of repair" is reasonably capable of extending to the payments Stafford made to Garner for his work in identifying construction defects and crafting remedies. That much is apparent from the history of the RCLA itself—in a prior version of the Act in effect between 1999 and 2003, the Legislature classified "any reasonable and necessary engineering or consulting fees required to evaluate and cure the construction defect" as a *component* of "the reasonable cost of repairs necessary to cure any construction defect" for which the Act permitted recovery, not as an independent category of damages.[14] And appellants themselves acquiesced to a similar meaning and usage of "costs of repair" at trial, allowing Stafford to introduce, without objection, evidence of her claimed "costs of repair" (in so many words) that included the Garner expenses.[15]

Under the charge as submitted, the jury could have compensated Stafford for the Garner expenses as a component of her "costs of repair."[16] If the charge should have done otherwise, as appellants imply, it was incumbent upon them to timely preserve that complaint below.[17] They did not do so. We overrule appellants' second issue.

This brings us to appellants' first issue, challenging the legal sufficiency of the evidence to establish the reasonableness and necessity of the Garner expenses. As an initial

---

[14] Act of May 8, 1999, 76th Leg., R.S., ch. 189, § 5, 1999 Tex. Gen. Laws 663, 666 (emphasis added) (amended 2003 and 2007) (current version at Tex. Prop. Code § 27.004(g)).

[15] E.g., Plaintiff's Exhibit 152, a document titled "Costs of Repair" that lists, among other expenses incurred by Stafford, the Garner expenses.

[16] *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 770 (Tex. 2003) (holding that, absent appropriate instructions or definitions, jury could have compensated loss of enjoyment of life as component of any or all of pain and suffering, mental anguish, disfigurement, or physical impairment).

[17] *See* Tex. R. Civ. P. 274.

8

observation, Stafford, like appellants, did not object to the form of the charge, so she is likewise bound by its language as submitted—and this includes the requirement that she prove her "*reasonable and necessary* costs of repair."[18]  As Stafford urges, whether she met this burden does not singularly turn on her witnesses' failure to intone the "magic words" "reasonable" or "necessary"—what matters, rather, is whether Stafford presented evidence of facts and circumstances sufficient to enable the jury reasonably to infer that the services provided by Garner were in fact necessary to repair her home and that the charges for those services were reasonable.[19]  Further, considering that the services and charges in question here are those of a structural engineer, a profession requiring specialized, technical knowledge, the aid of expert testimony would be necessary to enable the lay jury to draw reasonable inferences regarding the reasonableness of the services provided, not to mention their necessity.[20]  While Garner might conceivably have provided this testimony, he did not do so.

While Stafford refers us to some '80s-era court of appeals cases that seem to have adopted a less exacting approach, the Texas Supreme Court, as appellants emphasize, has forcefully reiterated in recent years that proof of "reasonable and necessary" repair damages requires evidence

---

[18] *See, e.g.*, *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (absent preserved meritorious complaint of charge error, challenges to sufficiency of evidence supporting jury findings are evaluated in light of charge as submitted).  Nor does Stafford appear to dispute on appeal that she was required to prove the reasonableness and necessity of the Garner expenses.

[19] *See Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 694 (Tex. App.—Austin 1989, no writ).

[20] *See, e.g.*, *Wortham Bros., Inc. v. Haffner*, 347 S.W.3d 356, 360-62 (Tex. App.—Eastland 2011, no pet.) (expert testimony required to establish reasonableness and necessity of cost of roof replacement); *see also FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90-91 (Tex. 2004) (matters involving specialized or technical knowledge generally require expert testimony).

of "more than simply 'the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefore'"—"[i]nstead, some other 'evidence showing that the charges are reasonable' is required."[21]  Thus, in *Mustang Pipeline*, the supreme court held that proof that a company contracted to pay and ultimately did pay $2 million to build a new pipeline did not suffice as evidence of repair damages absent any proof that the contracted-for amount was reasonable.[22]  More recently, in *McGinty*, the supreme court held there was no evidence of reasonable repair costs where the plaintiff's damages expert had provided an estimate of repair costs and detailed how he derived it from a software program widely used in the insurance industry and some historical data, yet had not established why or how this process yielded an estimate that was reasonable.[23]  Garner's testimony falls short for reasons similar to those presented in *McGinty*.

In his testimony, Garner recounted at some length the services he or his firm provided to Stafford, including inspections of the house that led to the discovery of several construction defects, some of which presented potential hazards to the inhabitants—e.g., the absence of sufficient "wall ties" connecting stone veneer to the house structure, an inadequately supported outdoor deck and chimney structure, missing and inadequately spaced fasteners on the house's metal roof, and leaks in the roof and some windows.  Garner also described the various remedial measures he crafted to address these issues.  He further indicated that his opinions regarding the defects and repairs were based on "reasonable engineering methodology and science."

---

[21]  *McGinty*, 372 S.W.3d at 627 (quoting *Gossett*, 294 S.W.2d at 383).

[22]  *Mustang Pipeline*, 134 S.W.3d at 201 (quoting *Gossett*, 294 S.W.2d at 383).

[23]  *McGinty*, 372 S.W.3d at 627-28.

10

As for his charges for these services, Garner explained that he and his firm billed at an hourly rate, with Garner's services valued at $150/hour and lower rates for other firm employees. The time attributed to the various tasks performed by Garner and his firm, the applicable hourly rates, and the resultant charges were detailed on invoices. But what is lacking from Garner's testimony, or anywhere else in the record, is any evidence from which the jury could reasonably discern that Garner's charges—whether the hourly rate, the amounts charged per task, or their total amount—were reasonable amounts to pay a structural engineer for the services he and his firm provided. Stafford comes no closer than to suggest a comparison to the amounts charged by Tom Luth, a general contractor and consultant (though not an engineer) whom appellants hired as an expert to investigate the house and give testimony at trial. For these services, Luth indicated that he had charged appellants $25,000 as of time of trial, charged at a rate of $200/hour. Without more, we cannot agree that this evidence regarding the amounts appellants paid their non-engineer trial expert enabled the jury to ascertain the reasonableness of Garner's charges for his engineering services. Similarly unavailing is Stafford's repeated emphasis on the severity of some of the defects Garner discovered and the fact that appellants ultimately acknowledged the existence of some of them. Even if this constituted competent evidence that at least some of Garner's services were necessary, such proof regarding "'the character of and need for the services rendered,'" again, cannot alone establish the reasonableness of his charges.[24]

In light of the Texas Supreme Court's precedents and this record, we must hold that Stafford presented no evidence that the Garner expenses were "reasonable and necessary costs of

---

[24] *Id*. at 627 (quoting *Gossett*, 294 S.W.2d at 383).

repair," as she was required to prove in order to recover them. Accordingly, we sustain appellants' first issue. In the posture of this appeal, we will modify the district court's judgment so as to award Stafford actual damages in the amount of $193,880 (i.e., corresponding to the amount of the unchallenged Hausman expenses), less the $91,500 in settlement credits, for a total of $102,380.

In the event they succeeded in obtaining this relief, appellants have urged in their fourth issue that we must grant them a new trial on attorney's fees. Now that both the Garner expenses and the non-Hausman, non-Garner expenses have been eliminated from the actual damages award—a total reduction of almost 40% ($124,000) as compared to the $317,074.64 originally awarded by the jury—appellants reason that the evidence is factually insufficient to support the entire amount of attorney's fees found by the jury.[25] We agree. After having found that Stafford had incurred $317,074.64 in actual damages, the jury awarded her $183,085 in attorney's fees, which represented the entire amount of fees Stafford had sought. Although the attorney's fee question submitted to the jury did not specifically instruct it to consider "the amount [of money] involved and the results obtained," inquiring only as to "a reasonable fee for the necessary services of [Stafford's] attorneys in prosecuting the case against either [CS] or [Callahan],"[26] Stafford's attorney presented

---

[25] While acknowledging that appellants' new-trial motion preserved this complaint as to the reduction in actual damages yielded by the district court's elimination of the non-Hausman, non-Garner expenses from the actual damages award, Stafford complains that appellants "raise[] the factual sufficiency of the attorney's fees related to any exclusion of engineering fees for the first time on appeal." To the extent Stafford is asserting that appellants waived the issue by failing to raise it below, we disagree. *See Barker*, 213 S.W.3d at 312-13 (citing *Bunton v. Bentley*, 153 S.W.3d 50, 53 (Tex. 2004)).

[26] *Cf. id*. at 313; *see Arthur Andersen & Co. v. Perry Equip. Corp*., 945 S.W.2d 812, 818 (Tex. 1997) (setting forth "[f]actors that a factfinder should consider when determining the reasonableness of a fee").

uncontroverted testimony acknowledging that such reasonableness required a relationship between the amount of the fees and the amount of damages at issue. Under these and other circumstances presented, we cannot be "reasonably certain that the jury was not significantly influenced by the erroneous damage award."[27] We accordingly reverse the judgment award of attorney's fees and remand for new trial. On remand, the district court should likewise recalculate the prejudgment interest award in light of the reduced actual damages award.[28]

In their sole remaining issue, appellants complain that the district court erred in "refusing to require Stafford to elect between the remedies afforded by her negligence and DTPA claims." Their evident concern is that the judgment imposes liability under both the DTPA and negligence theories, which in their view raises "double recovery" concerns or enables Stafford to obtain relief under her negligence theory to which she would be entitled only under the DTPA. Contrary to appellants' arguments, the judgment is consistent with an automatic election of the theory affording Stafford the greatest recovery[29]—her DTPA theory, under which she can recover not only her actual damages, but her additional damages and attorney's fees. In contrast, Stafford

---

[27] *Bossier Chrysler-Dodge II, Inc. v. Rauschenberg*, 238 S.W.3d 376, 376 (Tex. 2007) (per curiam) (quoting *Barker*, 213 S.W.3d at 306 (alterations omitted)); *Barry v. Jackson*, 309 S.W.3d 135, 142-43 (Tex. App.—Austin 2010, no pet.) (op. on reh'g). *See also Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547-49 (Tex. 2009) (holding that court-imposed attorney's fees award was unreasonable as a matter of law where it represented entirety of attorney's fees being sought, judgment had awarded only about 30% of the actual damages claimant had sought, and there was no evidence "that such fees were warranted due [to] circumstances unique to this case").

[28] *See Eco Built, Inc. v. Lulfs*, No. 03-08-00427-CV, 2010 WL 3629821, at *10 (Tex. App.—Austin Sept. 17, 2010, no pet.) (mem. op.).

[29] *See Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987) ("[W]here the prevailing party fails to elect between alternative measures of damages, the court should utilize the findings affording the greater recovery and render judgment accordingly.").

13

can recover only actual damages under her negligence theory. The judgment thus does not award Stafford any relief beyond that which she can recover under the DTPA, nor otherwise provide her a duplicative recovery for the same harm.[30] Under these circumstances, any error in the judgment's imposition of negligence liability alongside DTPA liability would be harmless.[31] We overrule appellants' third issue.

We modify the district court's judgment so as to award Stafford actual damages in the amount of $102,380. We reverse the judgment awards of attorney's fees and prejudgment interest and remand those issues for further proceedings consistent with this opinion. We otherwise affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed in part; Modified and, as Modified, Affirmed in part; Reversed and Remanded in part

Filed: September 23, 2015

---

[30] *Cf. id.* (judgment had awarded both exemplary damages for gross negligence and DTPA treble damages based on common harm).

[31] *See* Tex. R. App. P. 44.1.

14