# Supreme Court of Texas

No. 24-0045

K&K Inez Properties, LLC, David Kucera, and Valerie Kucera,

*Petitioners*,

v.

Clay Kolle and Lacy Kolle,

*Respondents*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued December 2, 2025**

JUSTICE HUDDLE delivered the opinion of the Court.

This nuisance case between neighbors raises a host of questions. Most importantly, we determine how Civil Practice and Remedies Code Chapter 41's exemplary-damages cap applies when a jury apportions responsibility among multiple defendants and makes separate exemplary-damages awards to the two plaintiffs who jointly own the injured property. The trial court's judgment awarded economic damages of $425,000 for the property's diminished value and for loss of use, plus exemplary damages totaling $900,000. The court of appeals, concluding

the loss-of-use damages were unrecoverable, reduced the economic-damages award to $175,000 but otherwise affirmed. In this Court, petitioners contend that the amount of the judgment, though reduced by the court of appeals, still exceeds Chapter 41's limits on exemplary damages.

We agree and hold that (1) Section 41.008, which caps exemplary damages "awarded against a defendant" at "two times the amount of economic damages," requires consideration of the percentage of economic damages the jury found attributable to that defendant's conduct, not the total amount of economic damages awarded against all defendants; and (2) where, as here, the economic damages are awarded to the plaintiffs jointly as a single amount, the cap applies to each defendant based on that single amount of economic damages. We reverse the court of appeals' judgment in part and remand to the trial court to determine the proper allocation of exemplary damages in light of the appellate court's reduction of the damages award.

## I. Background

Clay and Lacy Kolle live and graze cattle on a 126-acre property in Victoria County. K&K Inez Properties, a company jointly owned by David and Valerie Kucera, owns a 50-acre plot of adjoining land on which the Kuceras also live. When the Kuceras[1] began developing a residential subdivision on their property, they constructed a dam and berms, which the Kolles allege altered the natural flow of a creek and caused flooding on the Kolles' land.

---

[1] Except where necessary to refer to them individually, we will refer to David Kucera, Valerie Kucera, and K&K jointly as "the Kuceras."

2

The Kolles sued the Kuceras, alleging violation of the Water Code[2] and multiple common-law claims. The Kuceras timely designated Victoria County as a responsible third party, alleging that "the water drainage issues [the Kolles] now complain of, if they exist, are the result of actions taken or required by Victoria County." The trial court initially granted leave to designate the County as a responsible third party, but it later granted the Kolles' motion to strike the designation on the ground that there was no evidence that the County was responsible for the Kolles' damages.

At trial, the Kuceras requested that the trial court submit a jury question asking whether the Kolles' own negligence caused the damage to their property and include the Kolles in the proportionate-responsibility question. The trial court refused. As a result, the liability questions and the proportionate-responsibility question included only the three defendants—David Kucera, Valerie Kucera, and K&K.

The jury found for the Kolles on all liability theories, including that all defendants intentionally and negligently created a private

---

[2] Water Code Section 11.086 provides:

(a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.
(b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

TEX. WATER CODE § 11.086(a), (b).

3

nuisance.[3]   The jury also found that Valerie Kucera was part of a conspiracy that damaged the Kolles.  It apportioned responsibility for causing "the harm to the Kolle Property" as follows:

- David Kucera          40%

- Valerie Kucera        20%

- K&K                   40%

As to damages, the jury found the following:

- Decrease in market value of the Kolles' property          $175,000

- Compensation for the Kolles' loss of the use of their property in the past          $210,000

- Compensation for the Kolles' loss of the use of their property in the future until it can be repaired, fixed, or restored, assuming the obstructions that caused the flooding are removed          $40,000

Finally, the jury found by clear and convincing evidence that "the harm to the Kolles" resulted both from David Kucera's gross negligence and from gross negligence attributable to K&K.  It awarded Clay Kolle exemplary damages of $250,000 from David and $250,000 from K&K; it awarded Lacy Kolle $500,000 from David and $250,000 from K&K.[4]

---

[3] In addition, the jury found that all three defendants violated Section 11.086 of the Water Code and intentionally caused a trespass on the Kolles' property.

[4] The jury made additional damages findings that were not incorporated into the trial court's judgment.

4

The Kolles elected to recover under their nuisance theory. Based on the jury's verdict, the trial court rendered judgment against the Kuceras as follows:

David Kucera:
- Personally liable to the Kolles for $170,000 in economic damages (40% of $425,000)
- Liable to Clay Kolle for $200,000[5] in exemplary damages
- Liable to Lacy Kolle for $200,000 in exemplary damages

K&K:
- Personally liable to the Kolles for $170,000 in economic damages (40% of $425,000)
- Jointly and severally liable for the entire $425,000 in economic damages
- Liable to Clay Kolle for $250,000 in exemplary damages
- Liable to Lacy Kolle for $250,000 in exemplary damages

Valerie Kucera:
- Personally liable to the Kolles for $85,000 in economic damages (20% of $425,000)
- Jointly and severally liable for the entire $425,000 in economic damages[6]

---

[5] The judgment did not explain why the trial court decreased the jury's exemplary-damages awards against David Kucera, but these reductions were not challenged by the Kolles.

[6] The judgment also included a permanent injunction requiring the Kuceras to remove any obstructions to the natural drainage of water from the Kolles' property, including the previously constructed dam and berms. That injunction has not been challenged on appeal.

5

The Kuceras appealed.  The court of appeals reversed the $250,000 awarded for loss of use ($210,000 for past and $40,000 for future) because the injury was deemed permanent and thus precluded recovery for loss of use.  712 S.W.3d 125, 147–48 (Tex. App.—Corpus Christi–Edinburg 2023) (citing *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 478–79, 481 (Tex. 2014)).  Thus, the court of appeals reduced the Kolles' total economic damages from $425,000 to $175,000—the amount the jury awarded for diminution of the property's market value.  The court "affirm[ed] the judgment in all other respects," including the exemplary-damages awards.  *Id.* at 151.  The Kuceras filed a petition for review, which we granted.[7]

## II.  Discussion

In this Court, the Kuceras raise four issues:

(1)    The trial court erroneously struck the designation of Victoria County as a responsible third party.

(2)    The trial court erred by refusing to submit the Kolles' negligence and proportionate responsibility.

(3)    The judgment violates the one-satisfaction rule.

(4)    The judgment misapplies Chapter 41's caps on exemplary damages.

We address each issue in turn.

## A.  Designation of responsible third party

The Kuceras first argue that the trial court abused its discretion by striking their designation of Victoria County as a responsible third

---

[7] The Kolles do not challenge the portion of the court of appeals' judgment reducing their actual damages from $425,000 to $175,000.

party after they timely designated it under Civil Practice and Remedies Code Section 33.004. The Kuceras alleged that Victoria County's actions "affect[ed] the amount of surface water drainage onto the Kolle[s'] property and the ditch/tributary running through [the Kuceras'] property. . . . [T]he water drainage issues [the Kolles] now complain of, if they exist, are the result of actions taken or required by Victoria County." The trial court overruled the Kolles' objection, apparently determining that the Kuceras pleaded sufficient facts to support Victoria County's designation as a responsible third party. *See* TEX. CIV. PRAC. & REM. CODE § 33.004(g).

The Kolles later filed a motion to strike the designation under Section 33.004(*l*). That provision states:

> After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage. The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.

*Id.* § 33.004(*l*). In contrast to the "lenient pleading requirements" for obtaining leave to file the initial designation, *In re Gonzales*, 619 S.W.3d 259, 264 (Tex. 2021), the filing of a motion to strike the designation placed the burden on the Kuceras to produce sufficient evidence to raise a genuine fact issue regarding Victoria County's responsibility for the Kolles' injury. This standard of review has been described as "mirroring a no-evidence summary judgment." *In re Eagleridge Operating, LLC*, 642 S.W.3d 518, 526 (Tex. 2022).

7

The trial court granted the Kolles' motion and struck the designation. The Kuceras argue that this was error because Section 33.004(*l*) required the court to determine whether there is evidence that the County was *responsible* for the Kolles' injury but the trial court instead required evidence that the County was *liable* for the injury. The Kuceras correctly observe that the fact that a third party cannot be held liable—for example, because it has a valid defense to liability—is no basis for striking a responsible-third-party designation. *See In re Mobile Mini, Inc.*, 596 S.W.3d 781, 787 (Tex. 2020) (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 868–69 (Tex. 2009)). Relying on this distinction between responsibility and liability, the Kuceras contend that the trial court erred by requiring evidence of Victoria County's negligence, which, they argue, is relevant only to the County's *liability* for the Kolles' injury, not its *responsibility* for the injury.

The Kuceras' argument turns on the meaning of "responsible" as used in Section 33.004(*l*). "As with any statute, our interpretation begins with the statute's text." *Third Coast Servs., LLC v. Castaneda*, 726 S.W.3d 201, 206 (Tex. 2025); *see also Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024) ("We construe [a statute's] words in light of their statutory context, considering the statute as a whole."). Chapter 33 does not define "responsible," but it defines "responsible third party" as "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an

8

applicable legal standard, or by any combination of these." TEX. CIV. PRAC. & REM. CODE § 33.011(6). The statute similarly defines "percentage of responsibility" as a person's attributable percentage of causing or contributing to cause the harm "whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity violative of the applicable legal standard, or by any combination of the foregoing." *Id.* § 33.011(4).[8]

These definitions make clear that "responsible" and "responsibility" as used in Section 33.004(*l*) require more than a mere showing that the designated person caused (or contributed to cause) the plaintiff's injury. A designated person is not "responsible" for the injury—i.e., is not a "responsible third party"—unless he has also violated some applicable legal standard, including by negligent act or omission. Absent evidence raising a genuine fact issue whether the designated person has violated some such standard, there is no evidence that the designated person is "responsible," and thus the designation must be struck. *See id.* § 33.004(*l*). Here, although the Kuceras adduced evidence that the County's actions may have caused or contributed to the flooding, they presented no evidence that the County's actions violated any applicable standard of care in doing so.

The Kuceras contend they did present evidence of Victoria County's negligence. They point to testimony of two witnesses—the engineer who designed the subdivision on the Kuceras' property and a

---

[8] The definitions in Section 33.011 apply to all provisions in Chapter 33. *See* TEX. CIV. PRAC. & REM. CODE § 33.011 (defining terms as used "[i]n this chapter").

9

former Victoria County commissioner—to the effect that the County's decision to deepen and widen waterways upstream from the Kolles' property was "imprudent." But the Kuceras presented no evidence of the applicable standard of care. Merely describing the County's conduct as "imprudent," without more, is insufficient to raise a genuine fact issue as to whether the County violated an applicable standard of care. *See Walgreens v. McKenzie*, 713 S.W.3d 394, 402 (Tex. 2025) (concluding that, to establish a prima facie case of negligence under the TCPA, a plaintiff must present evidence of, among other things, "the applicable standard of care" and "how the [defendant's conduct] fell below that standard"); *Cobb v. Dall. Ft. Wor. Med. Ctr.–Grand Prairie*, 48 S.W.3d 820, 825 (Tex. App.—Waco 2001, no pet.) ("In a negligence case, the applicable standard of care is a threshold issue that the plaintiff must establish before the factfinder can determine if the defendant deviated from the standard of care to a degree that constitutes negligence."). The trial court did not err by striking the Kuceras' designation.

## B. Comparative negligence

The Kuceras next argue that the trial court erred by refusing their requests to submit a negligence question as to the Kolles and to include them in the proportionate-responsibility question. The Kolles respond that the Kuceras waived this argument when they expressly abandoned it in the court of appeals. We agree.

Courts "should hesitate to resolve cases based on procedural defects and instead endeavor to resolve cases on the merits." *Bertucci v. Watkins*, 709 S.W.3d 534, 541–42 (Tex. 2025) (quoting *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020)).

We have frequently admonished courts to construe briefs "liberally, but reasonably, . . . so that the right to appeal is not lost by waiver." *Lion Copolymer Holdings*, 614 S.W.3d at 732 (quoting *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019)). As a result, we frequently reverse when a court of appeals concludes that an issue has been waived through inadequate briefing or other procedural defect. *See, e.g.*, *Bertucci*, 709 S.W.3d at 542–43; *Lion Copolymer Holdings*, 614 S.W.3d at 733; *Horton*, 591 S.W.3d at 570–71.

Nevertheless, our preference for reaching the merits is not animated where, as here, the party urging review previously abandoned the issue in express, unequivocal terms. The Kuceras' briefing in the court of appeals did just that. Their opening brief complained of the trial court's error "in refusing to submit the comparative negligence of the [Kolles] to the jury." But their reply brief in that court expressly withdrew the issue:

> [The Kuceras'] first issue asserts that the trial court erred in refusing to submit the comparative negligence of the [Kolles] to the jury. Without waiving the right to litigate [the Kolles'] contributory negligence on retrial, [the Kuceras] are withdrawing Issue 1 for purposes of this appeal only.

Having expressly and unequivocally stated in the court of appeals that they were "withdrawing" this issue "for purposes of this appeal," the Kuceras cannot resurrect it in this Court. *See Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991) ("Since Sbrusch abandoned the argument that the District owed him a duty as the owner or occupier of the bridge, we cannot consider it."); *see also*

11

*Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996) ("A party's express renunciation of a known right can establish waiver.").

## C. One-satisfaction rule

The Kuceras contend that the trial court's judgment awarded the Kolles a double recovery for the same injury in violation of the one-satisfaction rule. "Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 106 (Tex. 2018) (quoting *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000)); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) ("The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury.").

Here, the jury found the Kuceras liable to the Kolles under multiple theories: violation of the Water Code, intentionally creating a private nuisance, negligently creating a private nuisance, and trespass. But the jury was not asked to make separate damages awards under each liability theory. Instead, the jury was asked about each element of damages only once. For example, the jury determined the difference in the market value of the Kolles' property before and after the Kuceras' conduct only once, in response to a typical damages question that was predicated on a "yes" answer to any of the liability questions. In other words, the jury did not repeatedly award damages for the same injury under different liability theories. Nor did the trial court.

The Kuceras nevertheless contend that the judgment imposes liability for damages based on two distinct theories of liability— negligently causing a nuisance and intentionally causing a nuisance.

The jury found that Valerie Kucera conspired with David and K&K, which was predicated on a finding that David or K&K intentionally created a nuisance. Based on that conspiracy finding, the trial court's judgment made Valerie jointly and severally liable for all the Kolles' damages. The jury also found that David and K&K were grossly negligent, for which the trial court awarded exemplary damages. According to the Kuceras, an award of exemplary damages predicated on a gross-negligence finding necessarily requires that the nuisance was created *negligently*, and they contend that is at odds with a finding of intentional nuisance. In other words, the Kuceras contend negligent nuisance and intentional nuisance are mutually exclusive theories and the trial court improperly intertwined those theories in awarding damages.

We disagree. The Kuceras cite *Reed Tool Co. v. Copelin*, which held that an injury caused by gross negligence did not fall within the Workers' Compensation Act's exception for intentional injury. 689 S.W.2d 404, 406 (Tex. 1985) (citing *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981)). But that decision predates Chapter 41's current definition of "gross negligence." *See* TEX. CIV. PRAC. & REM. CODE § 41.001(11). The statute defines "gross negligence" to include any "act or omission" that objectively involves an extreme degree of risk and the actor proceeds with conscious indifference to others' rights, safety, or welfare despite actual, subjective awareness of that risk. *Id.* Nothing in that definition suggests that the conduct found by the jury could not support findings of both the intentional creation of

13

a nuisance and gross negligence.[9]  We reject the Kuceras' argument that the judgment violates the one-satisfaction rule.

## D.  Exemplary damages

Finally, the Kuceras argue that the court of appeals erred by affirming the award of exemplary damages.  They present three main arguments: (1) the statutory cap on exemplary damages must be applied against a damages award after it has been reduced to account for the defendant's proportionate responsibility; (2) the cap applies on a per-defendant basis rather than separately to each exemplary-damages award made to each plaintiff; and (3) the court of appeals erred by not evaluating whether the exemplary-damages awards were unconstitutionally excessive after it reduced the amount of actual damages.  We address these arguments in turn.

The parties present competing interpretations regarding several aspects of the exemplary-damages cap in Civil Practice and Remedies Code Section 41.008(b).  Again, "our interpretation begins with the statute's text," *Third Coast Servs.*, 726 S.W.3d at 206, and we "presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen," *id.* (quoting *Rogers v. Bagley*, 623 S.W.3d 343, 352 (Tex. 2021)).

---

[9] Moreover, the Kuceras did not object to the instruction that predicated the jury's gross-negligence finding on an affirmative answer to the intentional-nuisance question.  *See Lesikar v. Rappeport*, 33 S.W.3d 282, 308 (Tex. App.—Texarkana 2000, pet. denied) (holding that the defendants did not preserve a complaint that the judgment impermissibly awarded damages under the wrong liability theories when they failed to object that the charge predicated those damages on affirmative answers to those liability questions).

To place the statutory cap in proper context, *see Malouf*, 694 S.W.3d at 718, we examine the relevant portions of Chapter 41, beginning with Section 41.002, which establishes Chapter 41's scope:

> (a) This chapter applies to any action in which a claimant seeks damages relating to a cause of action.
>
> (b) This chapter establishes the maximum damages that may be awarded in an action subject to this chapter, including an action for which damages are awarded under another law of this state. This chapter does not apply to the extent another law establishes a lower maximum amount of damages for a particular claim.

TEX. CIV. PRAC. & REM. CODE § 41.002(a), (b). Chapter 41 defines "claimant":

> "Claimant" means a party, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff, seeking recovery of damages. In a cause of action in which a party seeks recovery of damages related to injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes both that other person and the party seeking recovery of damages.

*Id*. § 41.001(1). Section 41.006 provides that, in cases involving multiple defendants, "an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant." *Id.* § 41.006.

The cap at issue here is set forth in Section 41.008(b).[10] Subsections (a) and (b) state:

---

[10] The parties agree that Section 41.008(b) applies and that none of the exceptions set forth in Section 41.008 are at issue here. *See* TEX. CIV. PRAC. & REM. CODE § 41.008(c), (f).

15

(a) In an action in which a claimant seeks recovery of damages, the trier of fact shall determine the amount of economic damages separately from the amount of other compensatory damages.

(b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:

(1) (A) two times the amount of economic damages; plus

(B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or

(2) $200,000.

*Id.* § 41.008(a), (b).

Because there are no noneconomic damages here, the parties agree that the amount described in Section 41.008(b)(1)(B) is zero. Nevertheless, they sharply disagree about how the rest of Section 41.008(b) applies.

**1. Does the amount described in Section 41.008(b)(1)(A) take into account the percentage of responsibility attributed to a defendant?**

The first dispute concerns what constitutes "the amount of economic damages" in Section 41.008(b)(1)(A). The Kuceras argue that when responsibility is allocated to more than one defendant, "the amount of economic damages" referenced in Section 41.008(b)(1)(A) is the product of the damages award multiplied by the percentage of responsibility apportioned to the defendant. For example, because the Kolles were awarded (after the court of appeals' reduction) $175,000 in economic damages and the jury found David Kucera 40% responsible for those damages, the Kuceras contend that, with respect to David, "the amount of economic damages" referenced in Section 41.008(b)(1)(A) is

16

$70,000 ($175,000 x 40%).  Under this theory, two times that amount ($140,000) is less than $200,000, so the statute caps David's liability for exemplary damages at $200,000.

The Kolles counter that "the amount of economic damages" in Section 41.008(b)(1)(A) refers to the total economic-damages award ($175,000) without any reduction based on the percentage of responsibility attributed to David.  Thus, according to the Kolles, the statute caps David's liability for exemplary damages at $350,000 ($175,000 x 2).

The Kuceras rely primarily on *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848 (Tex. 2017).  That case concerned a challenge that the exemplary-damages award was unconstitutional.  We noted that the "guideposts" against which courts measure whether an award is unconstitutionally excessive include "the degree of reprehensibility of the defendant's misconduct" and "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award."  *Id.* at 873 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).  We thus held that the trial court must compare the exemplary-damages award to the amount of compensatory damages for which that defendant was found responsible, not the aggregate amount of damages awarded to the plaintiff, as "this approach most closely matches the punishment to each defendant's misconduct."  *Id.* at 879.

Likewise, here, we conclude that "the amount of economic damages" for calculating the statutory cap requires consideration of only those damages for which that defendant is responsible.  Section 41.008

17

provides that it is a cap on "[e]xemplary damages awarded *against a defendant*." TEX. CIV. PRAC. & REM. CODE § 41.008(b) (emphasis added). Section 41.006 states that the award of exemplary damages "must be specific as to a defendant." *Id.* § 41.006. And Section 41.011 expressly requires juries to consider evidence relating to "the degree of culpability of the wrongdoer" when determining the amount of exemplary damages. *Id.* § 41.011(a)(3). Calculating the cap based on *all* economic damages awarded against *all* defendants, as the Kolles urge, would contradict the Legislature's clear instructions that exemplary damages are specific to a defendant and must be tied to that defendant's degree of culpability. In addition to being more faithful to the statutory text, this reading avoids situations in which a defendant to whom the jury assigns only a small percentage of responsibility is subjected to a significantly higher cap based on the conduct of other defendants, opening the award to a constitutional challenge. *See Horizon Health*, 520 S.W.3d at 879. The Kolles' proposed reading, by contrast, would run counter to our duty to interpret statutes "in a manner that avoids constitutional infirmity." *Paxton v. Annunciation House, Inc.*, 719 S.W.3d 555, 578 (Tex. 2025) (quoting *Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998)). Accordingly, we hold that the statute caps an individual defendant's liability for exemplary damages by comparing the exemplary-damages award to the amount of economic damages attributable to that defendant, based on the defendant's percentage of responsibility.

### 2. Does the cap apply separately to each claimant's award of exemplary damages?

The next dispute concerns whether the statutory cap applies separately to each claimant's exemplary-damages award. The Kuceras

18

contend that the court of appeals erred by applying the cap to each exemplary-damages award against David Kucera—i.e., it applied the cap to the $250,000 awarded to Clay Kolle and separately to the $500,000 awarded to Lacy Kolle—rather than applying the cap once, to the total amount of exemplary damages for which the jury found David liable to the Kolles: $750,000. They argue that David cannot be required to pay more than $200,000 (or two times the amount of economic damages) in total, regardless of the number of plaintiffs. The Kuceras make the same argument as to the exemplary-damages awards against K&K.

The Kolles respond that Section 41.008 as a whole applies with respect to each claimant. They rely primarily on Section 41.008(a), which they contend expresses the Legislature's intent that Section 41.008 apply on a claimant-by-claimant basis because it describes "an action in which a claimant seeks recovery of damages." TEX. CIV. PRAC. & REM. CODE § 41.008(a).

The Kuceras do not directly refute this but argue instead that Clay and Lacy Kolle should be treated as a single "claimant" because they are co-owners of the damaged property. They point to Chapter 41's definition of "claimant," which states that, in cases involving "damage to the property of another person," "claimant" includes "both that other person and the party seeking recovery of damages." *Id.* § 41.001(1). The Kolles reply that Clay and Lacy jointly own the property, so neither is seeking damages for "property of another person"—they each seek damages for their own ownership interest.

19

Here, although the jury made separate exemplary-damages awards to Clay and Lacy Kolle, the jury made a single award of economic damages for the injury to their jointly owned property. As reduced by the court of appeals, that amount is $175,000. Because there is only one "amount of economic damages," the cap on exemplary damages awarded against each defendant must be based on that amount.[11]

The jury apportioned 40% of the responsibility for the damages to David Kucera and 40% to K&K, so "the amount of economic damages" for purposes of calculating each defendant's cap is $70,000 (40% of $175,000). Two times $70,000 is $140,000, which is less than $200,000, so Section 41.008(b) caps the exemplary damages that may be awarded against David Kucera and K&K at $200,000 each. Because the trial court's judgment awards more—it orders David to pay $400,000 ($200,000 to Clay Kolle and $200,000 to Lacy Kolle) and K&K to pay $500,000 ($250,000 to each)—the court of appeals erred in affirming the portion of the trial court's judgment awarding these amounts. We therefore reverse that portion of the judgment.

### 3. After reducing the economic-damages award, should the court of appeals evaluate whether the exemplary-damages awards are unconstitutionally excessive?

Finally, the Kuceras argue that the court of appeals erred by not remanding for the trial court to reconsider whether the exemplary-damages awards were unconstitutionally excessive in light

---

[11] We reserve for another day the question of whether separate awards of economic damages made to claimants seeking recovery for separate injuries should be combined for purposes of calculating the exemplary-damages cap as to a single defendant.

of the reduction in the actual damages. The Kuceras asserted in their motion for new trial and in the court of appeals that the exemplary damages were unconstitutionally excessive. The Kolles argue that the Kuceras forfeited that complaint through inadequate briefing. We need not determine whether the issue was waived in the court of appeals because where, as here, the court of appeals reduces the amount of actual damages, whether the exemplary damages are excessive in relation to the reduced actual damages is a claim that arises from the court of appeals' judgment and thus may be asserted for the first time in this Court. *Bunton v. Bentley*, 153 S.W.3d 50, 53 (Tex. 2004). When it reduced the actual damages awarded, the court of appeals should have reevaluated the exemplary damages or directed the trial court to do so on remand. *See id.* at 54.

The court of appeals generally will be able to make that determination itself. But a wrinkle in this case leads us to conclude the better course is to direct the trial court to consider whether the exemplary-damages awards are unconstitutionally excessive. As we hold above, Section 41.008(b) limits the total amount of exemplary damages that may be awarded per defendant, but the jury made separate (and different) awards to each plaintiff. We believe the trial court is in the best position to determine how to allocate the capped exemplary-damages awards ($200,000 as to each of David Kucera and K&K) between the Kolles. The trial court may then proceed to consider anew any potential challenge to those awards as unconstitutionally excessive.

21

### III. Conclusion

We affirm the court of appeals' judgment except as to the award of exemplary damages. The court of appeals erred in affirming the exemplary-damages awards because they exceeded Section 41.008(b)'s limits. Based on that court's reduction in the amount of economic damages, Section 41.008(b) caps the amount of exemplary damages against David Kucera and K&K at $200,000 each. The court of appeals also erred by failing to reevaluate the exemplary damages for unconstitutional excessiveness after it reduced the actual damages. Accordingly, we reverse the portion of the court of appeals' judgment affirming the exemplary-damages awards and remand the case to the trial court with instructions to (1) allocate as between the Kolles the exemplary-damages awards, which must not exceed $200,000 each as to David and K&K; and (2) consider, if urged by the Kuceras, any further challenge to those awards as unconstitutionally excessive based on the reduction in actual damages.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** May 22, 2026

22